GENERAL AGENTS INSURANCE
COMPANY OF AMERICA,
INC., Appellant,

v.

The HOME INSURANCE COMPANY
OF ILLINOIS, Appellee.

No. 04–99–00596–CV.

Court of Appeals of Texas,
San Antonio.

March 15, 2000.

---

Beth D. Bradley, Wade C. Crosnoe, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for appellant.

William W. Speed, David J. Schubert, Arter & Hadden, L.L.P., Dallas, Grant E. Adami, III, Davis, Goldman & Shuffield, Inc., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

General Agents Insurance Company of America, Inc. ("GAINSCO") appeals a judgment rendered in favor of The Home Insurance Company of Illinois, Inc. ("Home") in a subrogation action. GAINSCO presents seven issues for review, asserting: (1) Home is barred from recovering as a subrogee because it violated the provisions of GAINSCO's policy; (2) Home is precluded from recovering on its subrogation claim because: (a) Home breached its policy by failing to defend the insured; and (b) Home had unclean hands in the handling and settlement of the underlying lawsuit; (3) the jury charge was erroneous; (4) Home is judicially estopped from asserting a right to recover based on a contrary position taken in another lawsuit; and (5) Home is not entitled to recover attorney's fees. We reverse the trial court's judgment and remand the cause for a new trial.

### FACTUAL BACKGROUND

GAINSCO and Home were concurrent primary insurers of Power Equipment International, Inc. ("Power Equipment"). Both policies had $1 million limits. Power Equipment also had excess insurance through Royal Insurance ("Royal"), in the amount of $5 million.

Manuel Godines died after a tank truck he was driving rolled over and caught on fire. There were gruesome pictures depicting Godines's injuries, and there was some evidence that Godines survived a short period of time while burning. Godines was survived by his wife of 38 years, his four adult children, and his fourteen grandchildren. The evidence revealed that Godines was a likeable family man and a hard worker.

Various causes were alleged to have contributed to the accident, including: (1) the poor condition of the road, (2) Godines's negligent driving during rainy weather that caused the truck to hydroplane, (3) the poor mechanical condition of the truck, and (4) the brakes. Various entities were sued, including Power Equipment. Power Equipment had worked on the truck's brakes three months prior to the accident. In examining the brakes after the accident, oil was located on a portion of the brakes, and the plaintiffs contended that this oil evidenced negligence in the work that Power Equipment previously performed. Power Equipment's attorney stated that the oil could have been caused by: (1) the accident itself; or (2) the oil that poured from the central axle during the disassembly of the truck by the plaintiffs' expert. There was competing expert testimony with regard to whether the brakes were a contributing factor to the accident. There were four eyewitnesses, but none saw Godines's brake lights come on. The inference was that Godines never applied his brakes. The investigating DPS officers concluded that the accident was due to Godines's failure to take evasive action. Witnesses were available to testify regarding the poor condition of the road and the problems they had experienced with that road during rainy weather. A mechanic, who inspected the truck the day before the accident, would testify that the brakes were fine. This testimony had its weaknesses because of the cursory nature of the mechanic's inspection. Members of

Godines's family would testify that Godines continually complained of the condition of the truck, including the brakes. This testimony was corroborated by a co-worker, who also said that the brakes were not working properly. In summary, there was the usual potpourri of evidence favoring and disfavoring both sides. It is likely that a jury verdict favoring either side would have sufficient evidence to support it.

GAINSCO was the first to receive notice of the claim and hired Larry Coffey to defend Power Equipment. Home later received notice and initially agreed that Power Equipment was covered under its policy. Home's file was later transferred to Michael Hansen in Dallas. Hansen testified that the endorsement adding Power Equipment was missing from the policy when he received the file. As a result, Hansen instructed Coffey that Power Equipment was not covered in March of 1994. Hansen corrected this misinformation upon receiving the missing endorsement in April of 1994. Hansen testified that he was pleased with Coffey's performance and did not perceive a need to hire an additional attorney. Both Hansen and Jack Wisdom, GAINSCO's representative, testified that GAINSCO never requested reimbursement for the amounts GAINSCO paid Coffey; however, Hansen stated that Home was willing to reimburse GAINSCO for 50% of the amount paid.

Coffey estimated that Power Equipment had a 60% chance of prevailing at trial. He estimated the potential damage award at $2 million—$5 million. The original settlement demand by the plaintiffs was $10 million. In January of 1995, Wisdom viewed the case as one of no liability but would offer $7,500 to settle. On March 16, 1995, the plaintiffs lowered their settlement demand to $5 million. This demand was within policy limits, and Todd Dunn, Power Equipment's business manager, sent a *Stowers* letter to the insurance companies demanding that the case be settled at some figure within the insurance cover-

age. In response to Dunn's demand, Royal, the excess carrier, also demanded that Home and GAINSCO either tender their limits or settle the case within those limits.

Mediation was scheduled for April 11, 1995. As of April 3, 1995, Coffey's estimations regarding the case were unchanged. Wisdom, who estimated the chance of prevailing at trial at 80%, was willing to offer $50,000 in settlement on behalf of GAINSCO. Hansen thought $500,000 was a reasonable offer and obtained authority to offer $250,000 at mediation. During the course of the mediation, Wisdom obtained authority to offer up to $100,000. Home and GAINSCO, therefore, offered a combined $200,000 during mediation. The plaintiffs continued to demand $4.95 million. Hansen and Wisdom saw the photos of Godines's body and the accident scene for the first time at the mediation.

On April 13, 1995, Coffey sent Hansen and Wisdom a fax regarding the composition of the jury. The fax summarized the information Coffey obtained regarding the various jurors, and Coffey concluded that he had faced better juries in Alice, Texas, but he had faced worse. The next day, Hansen spoke with Coffey. Hansen testified that Coffey decreased his estimate regarding the possibility of prevailing at trial to 50%; Coffey testified that he never decreased his estimation from 60%. Based on his re-evaluation of the case at that point, including his conversation with Coffey, Hansen received authority to offer Home's limits—$1 million. Hansen contacted Coffey, who contacted Wisdom. Wisdom expressed his surprise at Home's sudden change and stated that he would not offer above the $250,000. Wisdom told Coffey to inform Hansen that Home's payment of the $1 million was a voluntary payment on its part and not part of anything GAINSCO was doing. Coffey contacted the plaintiffs attorney, who subsequently accepted the $1,250,000 settlement offer.

Home then sued GAINSCO for the difference between half of the settlement

amount of $625,000, and the amount GAINSCO actually paid ($250,000). Home moved for partial summary judgment in an effort to clarify the issue to be decided by the jury. The trial court granted the summary judgment motion, ordering that if the finder of fact found that settlement of the *Godines* lawsuit for $1.25 million was reasonable, then Home was entitled to recover a pro-rata portion of the settlement paid from GAINSCO. The case was tried to a jury, which heard the evidence previously summarized regarding the history of the litigation. In addition, Home presented an expert witness who testified that the $1.25 million was a reasonable settlement amount. Dunn testified that the $1.25 million was a reasonable settlement and that he wanted the case settled, but Dunn also testified that it was reasonable to proceed to trial under the facts. Dunn stated that Power Equipment's position continued to be that it had not performed any defective brake work. The jury found that $1.25 million was the fair and reasonable amount that should have been paid to settle the Godines's claim against Power Equipment, and the trial court rendered judgment in favor of Home based on that finding.

## STANDARD OF REVIEW

■ For summary judgment to be proper, it must be shown that there is no genuine issue of material fact in the case and that the movant is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 549 (Tex.1985). Legal conclusions of a trial court are given no deference on appeal. *See Fidelity & Cas. Co. of New York v. Hailes,* 969 S.W.2d 123, 124 (Tex. App—El Paso 1998, pet. denied). As the final arbiter of the law, the appellate court has the power and the duty to independently evaluate the legal determinations of the trial court. *See id.*

■ Charge error is reviewed under an abuse of discretion standard. *See Texas Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990); *Pressler v.*

*Lytle State Bank,* 982 S.W.2d 561, 564 (Tex.App.—San Antonio 1998, no pet.). The "abuse of discretion" standard, however, contains two components, and which aspect of the standard applies depends upon the type of issue involved. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992); *Pressler,* 982 S.W.2d at 564. A reviewing court may not reverse a trial court's resolution of a factual issue under an abuse of discretion standard unless "the trial court could reasonably have reached only one decision." *Walker,* 827 S.W.2d at 839–40. The trial court has no discretion, however, in "determining what the law is or applying the law to the facts." *Id.* at 840. A trial court's clear failure "to analyze or apply the law correctly will constitute an abuse of discretion." *Id.*

## DISCUSSION

### A. Co–Insurer's Obligation

GAINSCO first contends that Home is barred from recovering as a subrogee because Home was subject to the same defenses GAINSCO would have against Power Equipment. GAINSCO asserts that the settlement violated the no-action clause and the voluntary payment clause. GAINSCO also asserts that the settlement violated GAINSCO's right to control the defense and settlement of the lawsuit. GAINSCO argues that based on Home's violation of these policy provisions, Home is not entitled to recover from GAINSCO as a matter of law.

Home responds that it is entitled to recover under contractual or equitable subrogation, primarily relying on *Employers Casualty Co. v. Transport Ins. Co.,* 444 S.W.2d 606 (Tex.1969). Home further responds that a breach of the no-action condition would not operate to forfeit the subrogation rights unless GAINSCO was actually prejudiced or deprived of a valid defense by settlement.

In *Employers Casualty Co. v. Transport Ins. Co.,* Prior Products, Inc., which was insured by Employers Casualty Company

and Transport Insurance Company, was sued. 444 S.W.2d 606, 607 (Tex.1969). Transport denied that *Prior Products* was an insured and refused to defend the suit. *See id.* Employers assumed the defense, negotiated a settlement, and subsequently sued Transport for contribution. *See id.* Because Employers failed to meet the requirements necessary to be entitled to contribution, the trial court's summary judgment was affirmed. *See id.* at 609. However, the Texas Supreme Court noted that Employers was not without a remedy. *See id.* at 610. "Its remedy for recovery from Transport of a pro rata part of the payment to the Siegels, as clearly indicated by the many cases listed above from other jurisdictions, lies in a suit asserting its right to payment through contractual or conventional subrogation to the right of the insured." *Id.* at 610. The opinion further indicates that whether the payment is voluntary is immaterial for purposes of the subrogation claim. *See id.*

*Employers* establishes that subrogation is the proper theory for one co-insurer to assert when seeking to recover from the other co-insurer the payment the first co-insurer made in excess of its pro rata share. *Employers* also indicates that the voluntary payment clause would not be a consideration in evaluating the subrogation rights because whether the payment was voluntary is immaterial. *Employers* does not address the other defenses to the subrogation action that have been raised by GAINSCO. That is, the effect on the subrogation claim caused by the breach of both the no-action clause and the condition that GAINSCO is entitled to control the defense and settlement of the lawsuit.

The no-action clause defense to a subrogation claim asserted by a concurrent insurer has been addressed by one Texas court in *Liberty Mut. Ins. Co. v. General Ins. Corp.*, 517 S.W.2d 791, 798 (Tex.Civ. App.—Tyler 1974, writ ref'd n.r.e.). In that case, demand was made on one of the concurrent insurers, Liberty, to contribute one-half of any settlement to the extent of

its limits, but Liberty refused to make any contribution. *See id.* at 793. Liberty argued that the other insurer was not entitled to recover against it because the no action clause was breached. *See id.* at 798. The court concluded: "It seems now to be the rule that an insurance company may ordinarily insist upon compliance with the no action clause for its own protection, but it may not do so after it is given the opportunity to defend the suit *or* to agree to a reasonable settlement and refuses to do *either* claiming erroneously that it has no responsibility." *Id.* at 798 (emphasis added). In this case, GAINSCO arguably did not agree to a reasonable settlement; however, it did defend the suit. GAINSCO did not erroneously claim that it had no responsibility. It was ready and willing to proceed in its defense of Power Equipment at trial.

GAINSCO's willingness to proceed with the defense of the lawsuit and its right to enforce the no-action clause in its policy must be balanced against Home's desire to settle for policy limits and its co-equal right to control the defense and settlement of the lawsuit. The obligation a co-insurer has in exercising its policy rights vis-a-vis its co-insurer is the crux of the controversy between GAINSCO and Home. GAINSCO contends that the trial court's partial summary judgment and jury charge resulted in the jury deciding an issue that was not determinative of whether Home was entitled to subrogation under the facts of the case.

The trial court's partial summary judgment concluded that Home was entitled to recover a pro-rata portion of the settlement paid to settle the Godines lawsuit if the finder of fact found that settlement of the lawsuit for $1.25 million was reasonable. The partial summary judgment, therefore, resolved the issue to be submitted to the jury. The trial court submitted the following question to the jury:

Find from a preponderance of the evidence the fair and reasonable amount of

money that should have been paid to settle the GODINES claim against POWER EQUIPMENT.

(Your answer should be stated as a total. In answering the question do not allocate nor attempt to allocate the percentage of the total among THE HOME INSURANCE COMPANY OF ILLINOIS and GENERAL AGENTS INSURANCE COMPANY OF AMERICA, INC.)

The jury answered $1,250,000.00. GAINSCO opposed the partial summary judgment. In addition, GAINSCO objected to the proposed question, asserting: "it is the incorrect standard for liability in this case, fails to submit the controlling factual issue and is irrelevant." GAINSCO also submitted the following alternative question:

Did GAINSCO act reasonably and in good faith in the defense of Power Equipment International, Inc. in the *Godines* lawsuit and the settlement of that lawsuit?

The trial court refused GAINSCO's request.

Home asserts that GAINSCO waived its complaint about the jury question. Home argues that GAINSCO's objection failed to specify its complaint that the question should have asked whether GAINSCO's settlement position was reasonable and held in good faith. Home contends that GAINSCO's proposed question did not cure the lack of specificity because the question focused on GAINSCO's defense and the actual settlement rather than GAINSCO's estimated settlement value. Finally, Home asserts that the jury found by negative inference that GAINSCO's settlement position was unreasonable.

■ With regard to the preservation issue, Rule 278 provides: "Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objec-

tion to such failure shall suffice in such respect if the question is one relied upon by the opposing party." TEX.R. CIV. P. 278. Home had the burden of proving its right to payment through contractual or conventional subrogation to the right of Power Equipment. *See Employers Cas. Co. v. Transport Ins. Co.*, 444 S.W.2d at 610 (remedy for recovery of pro rata part of payment by co-insurer lies in suit asserting right to payment through subrogation). Home convinced the trial court to grant a partial summary judgment with regard to the nature of the question it was entitled to rely upon to prove its right to payment through subrogation. GAINSCO's objection, coupled with its opposition to the partial summary judgment, were sufficient to preserve error. *See Dallas Market Center Development Co. v. Liedeker*, 958 S.W.2d 382, 386 (Tex.1997) (reviewing courts should concern themselves with common sense and not promote form over substance with regard to timing of objections and wording of requests); *State Dept. of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) (test for preservation of charge error is whether party made the trial court aware of the complaint, timely and plainly).

■ GAINSCO relies on two cases to support its view of the proper question to be submitted to a jury in this type of case: (1) *Storebrand Ins. Co. U.K., Ltd. v. Employers Ins. of Wausau*, 974 F.Supp. 1005 (S.D.Tex.1997), *aff'd*, 139 F.3d 1052 (5th Cir.1998); and (2) *Keystone Shipping Co. v. Home Ins. Co.*, 840 F.2d 181 (3rd Cir. 1988).

In *Storebrand Ins. Co. U.K., Ltd. v. Employers Ins. of Wausau*, 974 F.Supp. 1005 (S.D.Tex.1997), *aff'd*, 139 F.3d 1052 (5th Cir.1998), a lawsuit was filed by an employee against his joint employers, TDI and Stafftek. Wausau agreed to defend the joint employers. *See id.* at 1007. During mediation, the employee made a settlement demand of $500,000, the limit of Wausau's policy. *See id.* Wausau decided to offer only $300,000 based on the attor-

ney's evaluation of the case. *See id.* TDI demanded that Wausau increase its offer to $500,000. *See id.* When Wausau refused, TDI turned to its comprehensive general liability insurer, Storebrand Insurance, who paid the additional $200,000, but reserved its right to seek indemnification from Wausau. *See id.* As TDI's subrogee, Storebrand brought suit seeking indemnification, asserting claims for breach of the duty of good faith and fair dealing and violations of the DTPA and Insurance Code. *See id.* at 1007–1008. The court held that Wausau could not be liable for a breach of the duty of good faith and fair dealing because it was merely the servicing company for the Texas Workers' Compensation Facility, and, based on established precedent, an employer insured through the facility has no cause of action against a servicing company for breach of the duty of good faith and fair dealing. *See id.* at 1009. The court noted that Wausau would not be liable in tort, i.e., for violations of the DTPA and Insurance Code, for challenging a claim of coverage if there was any reasonable basis for denial of that coverage. *See id.* The court found a reasonable basis existed for Wausau to offer a maximum of $300,000 based on its attorney's evaluation of the claim. *See id.* The court concluded that the evidence showed that Wausau investigated the claim and performed a reasonable analysis and valuation of it. *See id.*

In *Keystone Shipping Co. v. Home Ins. Co.*, 840 F.2d 181 (3rd Cir.1988), a co-insurer, Keystone, sued Home Insurance Company, seeking reimbursement, claiming Home had failed to meet an obligation to pay its share of a reasonable settlement. The district court refused Keystone's claim, stating "Home's refusal to pay [an additional amount above its independent settlement evaluation] was a reasonable business decision based on an honestly held belief that the $30 million settlement was too high." 840 F.2d at 182. The Third Circuit affirmed, asserting: "A co-insurer like Home is not obliged to accept other co-insurers' evaluations of litigating prospects so long as its own evaluation is not unreasonably low and it has acted in good faith in advancing and adhering to that evaluation in the absence of a contract which can be construed to impose such an obligation." *Id.* at 182–83. The Third Circuit concluded: "Because the district court found that both the $30 million settlement and Home's evaluation of the litigating chances at $24.8 million were within the bounds of reason, and that Home's $24.8 million evaluation was not held and advanced in bad faith, we will affirm." *Id.* at 183. The Third Circuit agreed with the district court that the co-insurer's obligation was measured by good faith. *See id.* at 184.

We agree with GAINSCO that the trial court erred in concluding that the proper issue to be submitted to the jury was a determination of the fair and reasonable amount that should have been paid to settle the case. Whether Home is entitled to subrogation is determined by the reasonableness of GAINSCO's position and actions, not the reasonableness of the actual settlement amount. The trial court should have submitted a question to the jury that inquired about the reasonableness of GAINSCO's position and actions in exercising its rights under its policy given the totality of the circumstances. These include Home's decision to tender policy limits, the timing of Home's decision, the actions taken by both co-insurers in defending Power Equipment, Coffey's evaluation of the case, GAINSCO's evaluation of the case, the underlying facts of the case, etc.[1]

---

1. We reject GAINSCO's contention that the one month period during which Home denied coverage, its failure to pay Coffey's fees when such payment was not requested, and the timing of its decision to tender policy limits bar Home's recovery; however, we agree that each of these are factors for the jury to consider in evaluating the reasonableness of GAINSCO's actions.

B. Judicial Estoppel

GAINSCO contends that Home is judicially estopped from taking a position contrary to that taken by The Home Insurance Company in *Keystone.* GAINSCO asserts that Home was a wholly-owned subsidiary of The Home Insurance Company, the defendant in *Keystone,* until June of 1996, when Home merged into The Home Insurance Company. Home counters that until 1996, it was a completely separate entity from The Home Insurance Company and positions taken by the other entity cannot estop Home in the present case. Home argues that judicial estoppel does not apply because the subject matter of the suit in *Keystone* and the instant case are different. Home further notes that GAINSCO was not a party to the *Keystone* proceeding. Home maintains that judicial estoppel only applies to statements made by Home under oath, and GAINSCO has failed to point out any such inconsistencies.

 Judicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation. *See Andrews v. Diamond, Rash, Leslie & Smith,* 959 S.W.2d 646, 649 (Tex.App.—El Paso 1997, writ denied); *see also Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988). The doctrine is designed to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the courts to suit its own purposes. *See Andrews,* 959 S.W.2d at 649; *see also Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982). Judicial estoppel most clearly applies where a party attempts to contradict its own sworn statements made in prior litigation. *See Andrews,* 959 S.W.2d at 649.

 The elements of judicial estoppel under Texas state law are: (1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) which was successfully maintained in the prior proceeding; (3) not made inadvertently or by mistake, or pursuant to fraud or duress; and (4) which is deliberate, clear, and unequivocal. *See id.* Under applicable federal law, however, the inconsistency sought to be estopped need not arise from a sworn statement. *See id.* at 650 (citing *In re Phillips,* 124 B.R. 712, 720 (Bankr. W.D.Tex.1991)). In the federal arena, judicial estoppel requires only that a party take an affirmative position which it successfully maintained in an earlier proceeding, and which is contrary to the position the party seeks to invoke. *See Andrews,* 959 S.W.2d at 650. The essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage. *See id.* The primary purpose of the doctrine is not to protect litigants, but rather the integrity of the judiciary. *See id.* Thus, judicial estoppel does not require reliance or prejudice before a party may invoke it. *See id.*

 Although the position taken by Home in this case is clearly inconsistent with the position taken by the parent Home in *Keystone,* judicial estoppel does not apply. When the parent Home took its position in *Keystone,* Home was a separate and distinct legal entity. *See Valores Corporativos, S.A. de C.V. v. McLane Co., Inc.,* 945 S.W.2d 160, 168 (Tex.App.—San Antonio 1997, writ denied). Therefore, Home was not a party to the prior proceeding.

CONCLUSION

The trial court erred in determining the nature of GAINSCO's obligation in exercising its policy rights vis-a-vis its co-insurer, Home. The trial court's judgment is reversed, and the cause is remanded to the trial court for a new trial to determine the reasonableness of GAINSCO's actions considering the totality of the circumstances.