IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0261
════════════
 
Mid-Continent Insurance 
Company, Appellant,
 
v.
 
Liberty Mutual Insurance 
Company, Appellee
 
════════════════════════════════════════════════════
On Certified Questions from the United 
States
Court of Appeals for the Fifth 
Circuit
════════════════════════════════════════════════════
 
 
Argued October 18, 
2005
 
 
            
Justice Wainwright delivered the opinion of the 
Court.
            
Justice Willett filed a concurring opinion.
            
This dispute between one primary liability insurer and another primary 
insurer that also provides the applicable excess insurance policy comes to us on 
certified questions from the United States Court of Appeals for the Fifth 
Circuit. Pursuant to article V, section 3-c of the Texas Constitution and Texas 
Rule of Appellate Procedure 58.1, we answer the following questions:
 
            
1. Two insurers, providing the same insured applicable primary insurance 
liability coverage under policies with $1 million limits and standard provisions 
(one insurer also providing the insured coverage under a $10 million excess 
policy), cooperatively assume defense of the suit against their common insured, 
admitting coverage. The insurer also issuing the excess policy procures an offer 
to settle for the reasonable amount of $1.5 million and demands that the other 
insurer contribute its proportionate part of that settlement, but the other 
insurer, unreasonably valuing the case at no more than $300,000, contributes 
only $150,000, although it could contribute as much as $700,000 without 
exceeding its remaining available policy limits. As a result, the case settles 
(without an actual trial) for $1.5 million funded $1.35 million by the insurer 
which also issued the excess policy and $150,000 by the other insurer.
            
In that situation is any actionable duty owed (directly or by subrogation 
to the insured's rights) to the insurer paying the $1.35 million by the 
underpaying insurer to reimburse the former respecting its payment of more than 
its proportionate part of the settlement? 
 
            
2. If there is potentially such a duty, does it depend on the underpaying 
insurer having been negligent in its ultimate evaluation of the case as worth no 
more than $300,000, or does the duty depend on the underpaying insured's 
evaluation having been sufficiently wrongful to justify an action for breach of 
the duty of good faith and fair dealing for denial of a first party claim, or is 
the existence of the duty measured by some other standard?
 
            
3. If there is potentially such a duty, is it limited to a duty owed the 
overpaying insurer respecting the $350,000 it paid on the settlement under its 
excess policy?
 
 
Liberty 
Mut. Ins. Co. v. 
Mid-Continent Ins. Co., 405 F.3d 296, 310 (5th 
Cir. 2005). We answer the first question in the negative, and 
therefore do not reach the second and third questions.
I. Background
            
In November 1996, an automobile accident occurred in the construction 
zone of a State of Texas highway project. A 
westbound car driven by Tony Cooper on the lanes narrowed by construction 
crossed into on-coming traffic and collided with an eastbound car driven by 
James Boutin and occupied by his family. All 
members of the Boutin family suffered substantial 
injuries. Kinsel Industries was the general contractor 
on the highway project. Crabtree Barricades was Kinsel’s subcontractor responsible for signs and dividers. 
The Boutin family sued Cooper, the State, Kinsel, and Crabtree in the state district court of 
Liberty County, Texas, for damages resulting from the 
accident.
            
Kinsel was the named insured under Liberty 
Mutual Insurance Company’s $1 million comprehensive general liability (CGL) 
policy. Liberty Mutual also provided Kinsel with $10 
million in excess liability insurance. Crabtree was the named insured under 
Mid-Continent Insurance Company’s $1 million CGL policy. Mid-Continent’s policy 
identified Kinsel as an additional insured for 
liability arising from Crabtree’s work. Kinsel, 
therefore, was a covered insured under two CGL policies, both of which provided 
Kinsel with $1 million in indemnity coverage for the 
underlying suit. The insurers had no contract between them that was implicated 
by the automobile accident.
            
The CGL policies contained identical “other insurance” clauses providing 
for equal or pro rata sharing up to the co-insurers’ respective policy limits if 
the loss is covered by other primary insurance:
 
            
4. Other Insurance. 
 
If other 
valid and collective insurance is available to the insured for a loss we cover 
under Coverages A [‘Bodily Injury and Property Damage 
Liability’] or B of this Coverage Part, our obligations are limited as follows:
 
a. 
Primary Insurance
 
. . . 
If this insurance is primary our obligations are not affected unless any of the 
other insurance is also primary. Then, we will share with all that other 
insurance by the method described in c. below.
 
. . 
.
 
c. 
Method of Sharing
 
If all 
of the other insurance permits contribution by equal shares, . . . each insurer 
contributes equal amounts until it has paid its applicable limit of insurance or 
none of the loss remains, whichever comes first. 
If any 
of the other insurance does not permit contribution by equal shares, we will 
contribute by limits. Under this method, each insurer’s share is based on the 
ratio of its applicable limit of insurance to the total applicable limits of 
insurance of all insurers.
 
 
Each policy 
also contained a “voluntary payment” clause,[1] a subrogation clause,[2] and a version of the standard “no action” 
clause.[3]
            
Liberty Mutual and Mid-Continent do not dispute that each owed some 
portion of Kinsel’s defense and indemnification. The 
insurers agreed that a total verdict for the Boutins 
against all defendants would be around $2 to $3 million, but they disagreed on 
the settlement value of the case against Kinsel. 
Initially both insurers estimated Kinsel’s percentage 
of fault between ten percent and fifteen percent, but as the case progressed 
Liberty Mutual increased its estimate to sixty percent. After repeated refusals 
by Mid-Continent to increase its contribution to a settlement, Liberty Mutual 
agreed at a mediation with the Boutins to settle on behalf of Kinsel for $1.5 million (sixty percent of a $2.5 million 
anticipated verdict). Liberty Mutual demanded Mid-Continent contribute half, but 
Mid-Continent continued to calculate the settlement value of the case against 
Kinsel at $300,000 and agreed to pay only $150,000. 
Liberty Mutual, therefore, funded the remaining $1.35 million, paying $350,000 
more than its $1 million CGL policy limit. Liberty Mutual reserved the right to 
seek recovery against Mid-Continent for its portion of the settlement. Sometime 
later, before trial, Mid-Continent settled the Boutins’ claim against Crabtree for $300,000. Liberty Mutual 
sued Mid-Continent in the 191st Judicial District Court of Dallas County, Texas, seeking to recover Mid-Continent’s pro rata share of the sum paid to settle the 
Boutin family’s claim against Kinsel. Mid-Continent timely removed the case to federal 
court on diversity grounds. After a bench trial, the United States District 
Court for the Northern District of Texas concluded that Liberty Mutual was 
entitled through subrogation to recover $550,000 from Mid-Continent. Liberty 
Mut. Ins. Co. v. 
Mid-Continent Ins. Co., 266 F. Supp. 2d 533, 
544, 546 (N.D. Tex. 2003). Relying on 
General Agents Insurance Co. of America v. Home Insurance Co. of 
Illinois, 21 S.W.3d 419 (Tex. App.—San Antonio 2000, pet. dism’d by agr.), the district 
court determined that each insurer owed a duty to act reasonably in exercising 
its rights under the CGL policies. Liberty Mut. Ins., 266 F. Supp. 2d at 542. It found that 
Mid-Continent was objectively unreasonable in assessing Kinsel’s share of liability, and that Liberty Mutual was 
reasonable in assessing the same and in accepting the Boutins’ settlement offer. Id. at 543–44. Specifically, the district court stated that 
“Mid-Continent's recalcitrance to consider any change, despite the changing 
circumstances, was unreasonable, causing it to unreasonably assess its insured's 
exposure,” while on the other hand Liberty Mutual, “[b]y agreeing to settle for 
[$1.5 million] . . . resolved the case within policy limits, based on a 
reasonable estimation of Kinsel’s liability, and 
avoided the real potential of joint and several liability.” Id. at 
544. 
            
Therefore, the district court concluded that, whether apportioned pro 
rata or in equal shares, Mid-Continent was liable in subrogation for $750,000, 
one-half of the $1.5 million settlement with Kinsel. 
Id. at 
546.[4] Because Mid-Continent already paid 
$450,000 of its $1 million policy limit in settlement ($150,000 for the suit 
against Kinsel and $300,000 for the suit against 
Crabtree), the district court ordered Mid-Continent to pay only $550,000. 
Id. 
Although this amount is $50,000 short of Mid-Continent’s $750,000 share of the 
Kinsel settlement, the district court found no 
justification for increasing Mid-Continent’s total liability above its $1 
million policy limit. Id. Mid-Continent appealed, and the Fifth Circuit 
certified questions of law to this Court. Tex. R. App. P. 58.1. We accepted the 
certified questions.
II. Discussion
            
Liberty Mutual defends the district court’s $550,000 award on grounds 
that it is entitled to reimbursement through the contractual subrogation clause 
in its CGL policy and through the type of equitable subrogation applied in 
General Agents. Liberty Mutual argues it is subrogated to the contractual 
right of Kinsel to enforce language in Mid-Continent’s 
policy that places a duty on Mid-Continent to defend any claim or suit and pay 
an equal or pro rata share of settlement. Liberty Mutual also contends it is 
subrogated to the common law right of Kinsel to have 
Mid-Continent act reasonably when handling an insured’s defense—including 
reasonable negotiation and participation in settlement. The latter suggests we 
expand or create a modified Stowers duty 
in the circumstances of this case.
            
Mid-Continent contends that it did not breach any recognized contractual 
or common law duty to Kinsel to which Liberty Mutual 
may be subrogated. Mid-Continent further argues that it owed no direct duty to 
Liberty Mutual upon which reimbursement may be based. Any new duty in this 
context created by General Agents and adopted by the district court, 
Mid-Continent continues, is contrary to Texas law.
            
Specifically, with respect to subrogation, Mid-Continent denies that 
Kinsel has an enforceable contract right to which 
Liberty Mutual may be subrogated. Mid-Continent explains that because it 
complied with its contractual duty to timely assume defense of the suit against 
Kinsel and acknowledged policy coverage, Kinsel—and therefore Liberty Mutual—has no contract claim 
against Mid-Continent. Mid-Continent relies on the voluntary payment and 
no-action clauses in its policy to limit its liability to the amounts it 
consented to pay.
            
Mid-Continent adds that its only common law duty to Kinsel in this third party context was the Stowers duty to accept a reasonable settlement 
offer within policy limits from the Boutins, or else 
be liable for any excess judgment against Kinsel. 
See G. A. Stowers 
Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544, 547 (Tex. Comm’n App. 1929, holding approved); Md. Ins. Co. v. 
Head Indus. Coatings & Servs., Inc., 938 S.W.2d 27, 28 (Tex. 1996) (superceded by statute). Claiming there was 
no offer within policy limits and no excess judgment, Mid-Continent asserts 
Stowers cannot apply in this case.
            
Asserting that no direct action exists between co-insurers in Texas, 
Mid-Continent points to Traders & General Insurance Co. v. Hicks Rubber 
Co., 169 S.W.2d 142 (Tex. 1943) and American Centennial Insurance Co. v. 
Canal Insurance Co., 843 S.W.2d 480 (Tex. 1992). In Hicks Rubber, we 
held that a direct contribution action does not exist between co-insurers when 
their policies contain other insurance clauses. 169 S.W.2d at 
148. Similarly in Canal, the Court declined to recognize a direct 
action between an excess liability insurer and a primary liability insurer. 
843 S.W.2d at 483. Mid-Continent adds that the lack of 
litigation in Texas between co-primary insurers disconfirms 
any need to create a right of reimbursement between them.
            
Liberty Mutual’s claim for reimbursement 
involves the contractual and common law duties of an insurer in two distinct 
scenarios. The first scenario involves the ability of one co-insurer to compel a 
second co-insurer’s proportionate participation in the settlement of a third 
party claim. The second scenario, which arises from the first through Liberty 
Mutual’s claim of subrogation, involves the ability of 
an insured to compel an insurer’s proportionate participation in the settlement 
of a third party claim. Because no statute applies in the third party context, 
the scenarios are matters of common law contract and tort.
We agree with 
Mid-Continent and conclude that Liberty Mutual is not entitled to reimbursement 
because there is no direct duty of reimbursement between these co-primary 
insurers, and because Kinsel has no rights against 
Mid-Continent to which Liberty Mutual may be subrogated. We disapprove of 
General Agents to the extent it would provide recovery to an overpaying 
co-primary insurer in the context presented.
A. Contribution
            
Even though Liberty Mutual does not expressly argue for a right of 
contribution, its reliance on General Agents necessarily implies such. 
Thus, we analyze whether Liberty Mutual has a direct action for reimbursement 
under a right of contribution from Mid-Continent.
            
We recognized long ago in Hicks Rubber “the general rule that, if 
two or more insurers bind themselves to pay the entire loss insured against, and 
one insurer pays the whole loss, the one so paying has a right of action against 
his co-insurer, or co-insurers, for a ratable proportion of the amount paid by 
him, because he has paid a debt which is equally and concurrently due by the 
other insurers.” Hicks Rubber Co. 169 S.W.2d at 
148. The right of action is one of contribution, the elements of which 
require that the several insurers share a common obligation or burden, and that 
the insurer seeking contribution has made a compulsory payment or other 
discharge of more than its fair share of the common obligation or burden. 
Employers Cas. Co. v. 
Trans. Ins. Co., 444 S.W.2d 606, 609 (Tex. 1969) (citing 18 Am. Jur. 2d 
Contribution § 7 (2004)).
            
We also recognized in Hicks Rubber, however, that this 
direct claim for contribution between co-insurers disappears when the insurance 
policies contain “other insurance” or “pro rata” clauses. 169 
S.W.2d at 148. A pro rata clause operates to ensure that each insurer is 
not liable for any greater proportion of the loss than the coverage amount in its policy bears to the entire amount of 
insurance coverage available. Id. at 
147. The effect of the pro rata clause precludes a direct claim for 
contribution among insurers because the clause makes the contracts several and 
independent of each other. Id. With independent contractual 
obligations, the co-insurers do not meet the common obligation requirement of a 
contribution claim—each co-insurer contractually agreed with the insured to pay 
only its pro rata share of a covered loss; the 
co-insurers did not contractually agree to pay each other’s pro rata share. 
Employers Cas. Co., 444 S.W.2d at 609. In 
addition, the co-insurer paying more than its 
contractually agreed upon proportionate share does so voluntarily; that is, 
without a legal obligation to do so. Id. at 609–10. Thus, a co-insurer paying more than its 
proportionate share cannot recover the excess from the other co-insurers. 
Hicks Rubber, 169 S.W.2d at 148. The effect is 
not the same with respect to the insured’s right of recovery. When an insured is 
covered by multiple policies containing pro rata clauses, and the insured has 
not been fully indemnified, the insured may enforce this contractual 
obligation to recover the multiple insurers’ shares of the covered loss, so long 
as the shares are within the respective insurers’ policy limits. See id., 
at 147–48.
            
The CGL policies at issue here contain pro rata clauses. Liberty Mutual 
and Mid-Continent contractually agreed in their respective policies to pay a 
proportionate share of Kinsel’s covered loss up to $1 
million. The co-insurers did not, however, contract with each other to create 
obligations between themselves or to pay each other’s proportionate share of 
Kinsel’s loss. There is no contractual right of 
contribution between them, and the presence of the pro rata clauses in the CGL 
policies precludes an equitable contribution claim. In this situation, no 
contractual obligations exist between co-insurers to apportion between 
themselves the payment on behalf of the insured, and we are not persuaded to 
create such an obligation under the common law. Cf. Canal, 843 S.W.2d at 483 (declining to 
recognize an excess insurer’s right to bring a direct action for reimbursement 
from a primary insurer).
            
This conclusion is contrary to the holding of the San Antonio Court of 
Appeals in General Agents, which appears to have recognized a new duty 
between co-insurers to reasonably exercise their rights under an insurance 
policy given the totality of the circumstances. 21 S.W.3d at 
426. There, two insurers, General Agents Insurance Company of America, 
Inc. (GAINSCO) and The Home Insurance Company of Illinois (Home), concurrently held identical 
$1 million policies in favor of Power Equipment. Id. at 421. It is unclear from the opinion whether the 
policies contained pro rata clauses. Still, both insurers acknowledged coverage 
and provided defense in a personal injury suit against Power Equipment. 
Id. at 
422. The insurers differed in their assessment of prevailing at trial. 
Id. Home was willing to offer $1 million in settlement, while GAINSCO 
would offer no more than $250,000. Id. Home settled for $1.25 million, an 
amount funded $1 million by Home and $250,000 by GAINSCO. Id. Home sued 
GAINSCO for $375,000 (one half the $1.25 million settlement less the $250,000 
paid by GAINSCO), and recovered judgment based on the jury finding that $1.25 
million was “the fair and reasonable amount that should have been paid to 
settle” the claim against Power Equipment. Id. at 423.
            
On GAINSCO’s appeal, the San Antonio Court of 
Appeals reversed and remanded for a new trial, holding that “[t]he trial court 
should have submitted a question to the jury that inquired about the 
reasonableness of GAINSCO's position and actions in 
exercising its rights under its policy given the totality of the 
circumstances.” 
Id. at 
426 (listing various factors a jury should consider). According to the court, 
“GAINSCO’s willingness to proceed with the defense of 
the lawsuit and its right to enforce the no-action clause in its policy . . . 
[had to] be balanced against Home’s desire to settle for policy limits and its 
co-equal right to control the defense and settlement of the lawsuit.” Id. 
at 424.
            
The General Agents opinion suggests that breach of this duty would 
provide, through subrogation, an overpaying co-insurer with a right of 
reimbursement for the excess from the breaching co-insurer. Id. at 
426. Although it characterized the right of action as one of subrogation, 
the General Agents court did not identify the rights of the common 
insured to which Home could be subrogated to recover its overpayment from 
GAINSCO. Rather, by balancing Home’s interests with those of GAINSCO, the court 
appeared to premise a right of reimbursement on a direct duty between 
co-insurers to act reasonably in exercising their policy rights. Id. at 
426. For the reasons outlined above, we disagree with General Agents 
to the extent it creates a common law duty between co-primary insurers to 
reasonably exercise rights under an insurance policy.
B. Subrogation
            
Acknowledging that a right of contribution does not exist in this 
context, Liberty Mutual contends it can seek reimbursement through contractual 
or equitable subrogation to the rights of Kinsel. Both 
Hicks Rubber and Employers Casualty contain language suggesting 
that such an avenue of reimbursement could exist.
            
In Employers Casualty, after precluding a right to contribution, 
we said that the co-insurers’ remedy for reimbursement would lie in contractual 
or equitable subrogation. 444 S.W.2d at 610. In 
Hicks Rubber, a case relied upon in Employers Casualty, we said 
that when several insurance policies covering the same loss contain pro rata 
clauses, none of the co-insurers has a right to contribution from the others, 
“nor will the payment of the whole loss by any of them discharge the liability 
of the others.” 169 S.W.2d at 148. This languaage suggests that payment of the insured’s 
entire loss by one co-insurer does not relieve the other co-insurers’ 
contractual obligations to the insured to pay their pro rata share of the 
loss. Id. The implication is that the insured 
would still have a right to enforce the contractual obligation, and presumably, 
that the co-insurer seeking reimbursement could be subrogated to this right.
            
Having a right to subrogation, however, is distinct from the ability to 
recovery under that right. See Esparza v. Scott & White Health Plan, 
909 S.W.2d 548, 551 (Tex. App.—Austin 1995, writ denied) (“While an insurance 
contract providing expressly for subrogation may remove from the realm of equity 
the question of whether the insurer has a right to subrogation, it cannot 
answer the question of when the insurer is actually entitled to 
subrogation or how much it should receive.”). In Hicks Rubber and 
Employers Casualty we did not apply the particular facts to the elements 
of the suggested right to subrogation to determine if the overpaying co-insurer 
could actually recover. Doing so here, we determine that the facts preclude 
recovery because Liberty Mutual cannot meet the elements of subrogation.
            
There are two types of subrogation. See id. at 551. Contractual (or conventional) subrogation is created 
by an agreement or contract that grants the right to pursue reimbursement from a 
third party in exchange for payment of a loss, while equitable (or legal) 
subrogation does not depend on contract but arises in every instance in which 
one person, not acting voluntarily, has paid a debt for which another was 
primarily liable and which in equity should have been paid by the latter. 
Argonaut Ins. Co. v. Allstate Ins. Co., 869 S.W.2d 537, 542 (Tex. 
App.—Corpus Christi 1993, writ denied); see also Lee R. Russ & Thomas F. Segalla, 16 Couch 
on Insurance § 223:1 (3d ed. 2005).[5] In either case, the insurer stands in the 
shoes of the insured, obtaining only those rights held by the insured against a 
third party, subject to any defenses held by the third party against the 
insured. See Interstate Fire Ins. Co. v. 
First Tape, Inc., 817 S.W.2d 142, 145 (Tex. App.—Houston [1st Dist.] 1991, 
writ denied); Int’l Ins. Co. v. Med.-Prof’l Bldg. 
of Corpus Christi, 405 S.W.2d 867, 869 (Tex. Civ. 
App.—Corpus Christi 1966, writ ref’d n.r.e.); see also 16 Couch on Insurance § 222:5. 
Privity of contract between the insurers is not 
necessary. Phipps v. Fuqua, 32 S.W.2d 660, 663 (Tex. Civ. App.—Amarillo 1930, writ ref’d).
1. 
Kinsel’s Potential Contractual Rights
            
Liberty Mutual asserts a right to subrogation in equity and through the 
subrogation clause found in its CGL policy. In either case, Liberty Mutual must 
step into Kinsel’s shoes to assert only those rights 
held by Kinsel against Mid-Continent, subject to any 
defenses held by Mid-Continent against Kinsel. See 
Interstate Fire, 817 S.W.2d at 145; Med.-Prof’l Bldg. of Corpus Christi, 405 S.W.2d at 869. The 
potential rights of Kinsel to which Liberty Mutual may 
be subrogated stem from the contractual and common law duties an insurer owes 
its insured, which Liberty Mutual and Mid-Continent both owed to Kinsel. We analyze in turn Kinsel’s right to enforce these duties.
            
Liberty Mutual argues it is subrogated to the contractual right of Kinsel to enforce language in Mid-Continent’s policy 
imposing a duty upon Mid-Continent to defend and indemnify Kinsel and to pay a pro rata share of settlement. We agree 
that the co-insurers’ contractual duties to Kinsel 
were specified in the CGL policies and included, as discussed above, a several 
and independent duty to pay a pro rata share of a covered loss up to their 
respective policy limits. See Hicks Rubber, 169 S.W.2d 
at 147. But this duty cannot be viewed independent of the purpose of a 
pro rata clause, nor without consideration of the rules of indemnification. As 
Mid-Continent validly asserts, Kinsel has no right, 
after being fully indemnified, to enforce Mid-Continent’s duty to pay its pro 
rata share of a loss.
            
A liability policy obligates an insurer to indemnify the insured against 
a covered loss arising from the insured’s own legal liability. Members Mut. Ins. Co. v. Hermann Hosp., 664 
S.W.2d 325, 327 (Tex. 1984). An insured’s 
right of indemnity under an insurance policy is limited to the actual amount of 
loss. Paramount Fire Ins. Co. v. Aetna Cas. & Sur. Co., 353 S.W.2d 841, 
844, 845 (Tex. 
1962). Where two different policies provide coverage for a loss, the 
pro rata clause does not create an exception to the principle of indemnity, but 
rather implements that principle by eliminating the potential for double 
recovery by the insured. See Ortiz v. Great 
Southern Fire and Cas. Ins. 
Co., 597 S.W.2d 342, 343 (Tex. 1980) (“One 
reason that the right of equitable subrogation is granted to an insurer is to 
prevent the insured from receiving a double recovery.”); Fireman’s Fund Ins. 
Co. v. Md. 
Cas. Co., 77 Cal. Rptr. 2d 296, 305 (Cal. Ct. App. 1998) (“The fact that 
several insurance policies may cover the same risk does not increase the 
insured’s right to recover for the loss, or give the insured the right to 
recover more than once.”).
 
[W]here 
there are several policies of insurance on the same risk and the insured has 
recovered the full amount of its loss from one or more, but not all, of the 
insurance carriers, the insured has no further rights against the insurers who 
have not contributed to its recovery. Similarly, the liability of the remaining 
insurers to the insured ceases, even if they have done nothing to 
indemnify or defend the insured.
 
 
Fireman’s 
Fund Ins. Co., 77 Cal. Rptr. 2d at 
305.
            
Equity does not demand a different result here. We hold, therefore, that 
a fully indemnified insured has no right to recover an additional pro rata 
portion of settlement from an insurer regardless of that insurer’s contribution 
to the settlement. Having fully recovered its loss, an insured has no 
contractual rights that a co-insurer may assert against another co-insurer in 
subrogation.
2. 
Kinsel’s potential common law rights
            
Liberty Mutual also argues it is subrogated to the common law right of 
Kinsel to enforce Mid-Continent’s duty to act 
reasonably when handling an insured’s defense—including reasonable negotiation 
and participation in settlement. An insurer’s common law duty in this third 
party context is limited to the Stowers 
duty to protect the insured by accepting a reasonable settlement offer 
within policy limits. See Stowers, 15 S.W.2d at 547. Stowers is the only common law tort duty in 
the context of third party insurers responding to settlement demands. Md. 
Ins. Co., 938 S.W.2d at 28 (citing Tex. Farmers Ins. Co. v. Soriano, 881 S.W.2d 312, 318 (Tex. 1994) (Cornyn, J., concurring). “The Stowers duty is not activated by a settlement 
demand unless three prerequisites are met: (1) the claim against the insured is 
within the scope of coverage, (2) the demand is within the policy limits, and 
(3) the terms of the demand are such that an ordinarily prudent insurer would 
accept it, considering the likelihood and degree of the insured’s potential 
exposure to an excess judgment.” Am. Physicians Ins. Exch. v. Garcia, 876 
S.W.2d 842, 849 (Tex. 1994) (citing Stowers, 15 S.W.2d at 547). A demand above policy 
limits, even if reasonable, does not trigger the Stowers duty to settle. Id.
            
Mid-Continent did not breach a Stowers duty to Kinsel because the Boutins did not 
make a settlement offer within Mid-Continent’s policy limits. See id. 
(settlement demand must be within policy limits to 
trigger Stowers duty). We decline to modify 
Stowers to create rights for Kinsel and therefore, Liberty Mutual, via subrogation. In 
addition, we note Liberty Mutual paid a debt for which it too was primarily 
liable, thus not satisfying the traditional subrogation requirement that the 
subrogee pay a debt for which another was primarily 
liable. See Argonaut Ins. Co., 869 S.W.2d at 542; see also 16 Couch on Insurance § 223:1; 44 Am. Jur. 2d 
Insurance § 1787, at 256 (2003) (“[T]he doctrine of subrogation is 
inapplicable if the liability insurer seeking subrogation is the one primarily 
liable; and the doctrine is inapplicable if the effect of the respective 
policies is to establish equal liability.” (footnotes 
omitted)).
The present 
situation differs from the issue we addressed in Canal. 843 S.W.2d at 482. In Canal we recognized equitable 
subrogation as a basis for an excess insurer’s recovery against a primary 
insurer to prevent a primary insurer from taking advantage of an excess insurer, 
acting solely as such, when a potential judgment approaches the primary 
insurer’s policy limits. Id. 
at 483. The excess insurer would be forced to pay for a debt for 
which another insurer was primarily liable. In this case, however, Liberty 
Mutual played a dual role as primary insurer and excess insurer and was in a 
position to negotiate a good faith settlement on Kinsel’s behalf. Equity demanded a remedy for the excess 
insurer in Canal, but here equity does not favor such a remedy. A 
reasonable primary insurer, which did not improperly handle the claim, would not 
pay more than its primary policy limits. In paying $350,000 more than its $1 
million policy limits, Liberty Mutual seems to have been motivated by concern 
for its excess insurance policy. Mid-Continent cannot be required to agree to a 
settlement that requires payment in excess of its remaining coverage to protect 
Liberty Mutual’s excess insurance interests.
III. Conclusion
            
In response to the first certified question, we conclude there is no 
right of reimbursement in the context presented. Therefore, we do not reach 
questions two and three. Kinsel has no common law 
cause of action against Mid-Continent, nor does it have, after being fully 
indemnified, any contractual rights remaining against Mid-Continent. Because 
Kinsel has no rights to which Liberty Mutual may be 
subrogated, Liberty Mutual has no right of reimbursement through subrogation. Of 
course, how our answer is applied in the case before the Fifth Circuit Court of 
Appeals is solely the province of that certifying court. See Amberboy v. Societe de Banque Privee, 831 S.W.2d 793, 
798 (Tex. 
1992). 
 
 
                                    
________________________________________
                                                                        
J. Dale Wainwright
                                                                        
Justice
 
 
OPINION DELIVERED: October 12, 
2007
 










[1] 
The “voluntary payment” clauses provided, “No insureds 
will, except at their own cost, voluntarily make a payment, assume any 
obligation, or incur any expense, other than for first aid, without our 
consent.” 

[2] 
The subrogation clauses provided, “If the insured has rights to recover all or 
part of any payment we have made under this Coverage Part [‘Bodily Injury or 
Property Damage Liability’], those rights are transferred to us.”

[3] 
“A person or organization may sue us to recover on an agreed settlement or on a 
final judgment against an insured obtained after an actual trial; but we will 
not be liable for damages that are not payable under the terms of this Coverage 
Part [‘Bodily Injury or Property Damage Liability’] or that are in excess of the 
applicable limit of insurance. An agreed settlement means a settlement and 
release of liability signed by us, the insured and the claimant or the 
claimant’s legal representative.”

[4] 
At trial the parties disputed how many policies should be considered in 
apportioning the cost of the settlement, as Liberty Mutual also held a business 
auto policy and excess policy in favor of Kinsel. 
Id. at 
539. Because the Fifth Circuit’s certified questions presume the loss 
triggered only Mid-Continent’s and Liberty Mutual’s CGL policies, our answers consider only these two 
policies.

[5] 
“In the context of equitable subrogation, ‘Texas courts have been liberal in their 
determinations that payments were made involuntarily.’” Keck, Mahin & Cate v. Nat’l Union 
Fire Ins. Co. of Pittsburgh, Pa., 20 S.W.3d 692, 702 (Tex. 2000) (quoting 
Argonaut Ins. Co., 869 S.W.2d at 542). An insurer is not a volunteer if 
it pays a third party claim against its insured in good faith and under a 
reasonable belief that the payment is necessary to its protection. Id. (citing 
Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries 
Marine Corp., 932 F.2d 442, 447 (5th Cir. 
1991)).