TRADERS AND GENERAL INSURANCE COMPANY V. HICKS RUBBER COMPANY AND EMPLOYERS CASUALTY COMPANY.

No. 8017. Decided February 17, 1943.
Rehearing overruled March 31, 1943.
(169 S. W., 2d Series, 142.)

*Witt, Terrell, Lincoln, Jones & Riley,* of Waco, for Employers Casualty Company, *Simpson, Dorenfield & Fullingim* and *E. A. Simpson,* all of Amarillo, and *Lightfoot, Robertson & Gano,* of Fort Worth, for Traders and General Insurance Company, both petitioners.

Upon the theory that neither of the insurance companies are liable to the other or to the respondent Hicks Rubber Company. Liverpool and London Insurance Co. v. Delta County Farmers Assn., 121 S. W. 599; Automobile Ins. Co. v. Teague, 19 S. W. (2d) 599; 7 Couch on Ins., p. 6157; 26 C. J. p. 362; Stowers Furniture Co. v. American Indm. Co., 39 S. W. (2d) 956; Hartford Steam Boiler v. Cochran Co., 105 S. E. 856; 23 Tex. Jur. p. 526; 4 Joyce on Ins., par. 2493.

*Richey, Sheehy & Teeling,* and *H. M. Richey,* of Waco, for respondent, Hicks Rubber Company.

The Traders and General Insurance Company having obligated itself to defend the Hicks Rubber Company against the cause of action in the Harper case and to pay off any judgment rendered against it therein, the Hicks Rubber Company has a right to recover in this cause and the controversy is one between the two insurance companies only and the Court of Civil Appeal properly reversed the cause of action as between the two companies and to reform and render judgment for the Hicks Rubber Company. Lewis v. Pitts, 275 S. W. 473; Moran v. Midland Farms Co., 282 S. W. 612; 3 Tex. Jur., 1157.

MR. JUSTICE CRITZ delivered the opinion of the Court.

There are three parties to this suit, Hicks Rubber Company, Employers Casualty Company, and Traders & General Insurance Company, all private corporations. For convenience we will hereinafter refer to such respective parties as Hicks, Employers, and Traders.

This litigation grew out of a former suit by J. W. Harper against Hicks. Hicks was engaged in the tire business at certain premises in the City of Waco, Texas. As a part of such business it operated a number of trucks. These trucks were used by Hicks in transporting its tires. On one occasion one of Hicks' truck drivers was unloading tires from one of its trucks into its warehouse in Waco. The driver of the truck backed same to the street curb, and unloaded the tires contained therein by throwing them from inside the truck, across the sidewalk adjacent to Hicks' place of business, and into a chute leading into such place of business. Mrs. J. W. Harper, while walking on such sidewalk, was struck by one of the tires so thrown by Hicks' truck driver, and was seriously injured. Mr. J. W. Harper, the husband of Mrs. J. W. Harper, filed

suit in the District Court of McLennan County, Texas, against Hicks, to recover damages resulting from the personal injuries received by his wife on the occasion above mentioned. We will refer to this suit later in this opinion.

At the time Mrs. Harper was injured Hicks carried two policies of public liability indemnity insurance, one with Employers, and the other with Traders. Both of these policies were in full force and effect at the time Mrs. Harper was injured. The policy written by Employers protected Hicks as to its building in Waco, Texas, together with the sidewalks adjacent thereto. The Traders' policy protected Hicks against liability as to its truck and automobiles while used in its business.

From the statement we have just made, it is plainly evident that Hicks' liability to Mrs. Harper was covered by both the above-named insurance policies. The Employers' policy covered such liability because the accident occurred on the sidewalk adjacent to Hicks' building. The Traders' policy covered such liability because Mrs. Harper was injured by reason of the use of one of Hicks' trucks. Each policy was what we generally term, a public liability indemnity policy.

Each of the above-named policies contained what is generally termed, an "Other Insurance" provision. We here quote the respective provisions of each policy, as indicated:

Employers' Policy. "E. If the Assured has other insurance covering a loss or expense covered hereby, the Company shall be liable only for the proportion of such loss or expense which the sum hereby insured bears to the whole amount of valid and collectible insurance."

Traders' Policy. "If the Named Insured has other insurance against a loss by the policy ,the Company, as respects the Named Insurer, shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability expressed in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The Employers' Policy was for $10,000.00 to any one person. The Traders policy was for $20,000.00 to any one person. The "Other Insurance" provisions of these policies are in different words, but they mean the same thing.

We will not attempt any extended statement of the contents of these two insurance policies. Both purported to protect or indemnify Hicks against liability on any judgment against it for damages on account of bodily injuries to any one person, in the respective sums already shown. Such policies bound the above-named insurance companies to pay on behalf of Hicks all sums which it should become obligated to pay, by reason of the liability imposed upon it for damages, because of bodily injuries at any one time sustained by any person, and arising out of the thing or event insured. Also, such policies obligated such insurance companies to defend any suits against Hicks, alleging such injury and seeking damages on account thereof, even though such suits should be groundless or fraudulent. Such policies also obligated these insurance companies to pay all premiums on appeal bonds required in any such defended suit; to pay all costs taxed against Hicks in any such suits; to pay all expenses incurred by Hicks in connection with such suits; to pay all interest accruing after entry of judgment in such suits; and to pay all expenses incurred by Hicks for immediate medical and surgical relief to any person injured. Generally speaking, each of the above-mentioned policies required each of these insurance companies to take charge of the J. W. Harper suit and direct and manage its trial. Also, each of these insurance contracts prohibited Hicks from making settlement without the consent of the insurer.

When Hicks was served with citation in the J. W. Harper suit, it complied with each and both of the above insurance contracts, by turning the defense thereof over to the above-named insurance companies. Both companies recognized respective obligations to take charge of and defend such suit, and both companies actually furnished their respective attorneys for such purpose.

The J. W. Harper suit was tried twice. At the first trial Hicks was defended by both of these insurance companies; of course through their respective attorneys. Both companies began the defense of the second trial. After the jury was selected and impaneled for the second trial, J. W. Harper offered to settle for $3,000.00 and court costs. Employers wanted to settle at the amount offered, and so informed Traders and Hicks. Hicks, through its proper officer, was consulted, and such officer expressed it as his opinion that $3,000.00 was too much to pay. Such officer, however, left the matter entirely

with the insurance companies, as, indeed, he was compelled to do under these contracts of insurance. This record certainly fails to show that Hicks offered any impediment to the settlement offered. Traders refused the offer of settlement and insisted on trying the case. Employers, basing its action on the respective provisions of the two policies, to the effect that the two companies were liable in proportion to their maximum coverages, offered to pay to J. W. Harper one-third of the $3,000.00, and also offered to pay one-third of all court costs then incurred. Such offer was refused by Harper. Employers then declined to further assist in the defense of the Harper case in any way. We understand that the attorneys furnished by Employers did not enter any formal withdrawal. They simply refused to proceed further in assisting in the defense of the suit.

After the above events the suit of J. W. Harper against Hicks proceeded to trial and judgment, defended alone by the attorneys furnished by Traders. The attorneys furnished by Employers were not prevented from defending such suit by any act of Traders or Hicks. The only excuse for Employers' act in refusing to further defend was the failure or refusal of Traders and Hicks to settle as above detailed. There is no showing that Harper would have settled with one of these companies, his offer being to settle the entire suit. The trial of the J. W. Harper suit resulted in a judgment for Harper and against Hicks for $10,000.00. This judgment was affirmed by the Court of Civil Appeals at Waco. 131 S. W. (2d) 749. This Court dismissed the application for writ of error. (134 Texas 89, 132 S. W. (2d) 579.)

After the judgment in the J. W. Harper suit became final, mandate was duly issued and returned to the district court. Hicks notified each of these insurance companies of these facts, and requested them to pay off the judgment against it, with interest and costs. Neither insurance company complied with this request, either in whole or in part, and thereupon execution was issued out of the district court, and placed in the hands of the Sheriff of McLennan County, Texas. Such execution required and authorized the sheriff to levy upon and sell a sufficient amount of Hicks' property to produce the amount of the J. W. Harper judgment, with interest and costs.

Up to this time, as it had a right to do, Hicks relied on its insurance contracts, which made it the duty of these two

insurance companies to furnish attorneys to look after its interests in the Harper suit; and therefore it had employed no attorneys to represent it therein. After execution in the Harper suit had issued, and while the sheriff was about to levy same upon its property, and while these two companies were refusing to pay the Harper judgment, Hicks, as it was compelled to do, employed attorneys to protect it in the premises. We assume that such attorneys were employed to secure the payment of the Harper judgment by one or both of the insurance companies. We will discuss this matter later in this opinion.

After much negotiation, and several conferences between the respective representatives of these two insurance companies and the attorneys employed by Hicks, Traders paid two-thirds of the Harper judgment. It never denied its liability to do this. Employers paid $1,025.00, which we assume represented one-third of the amount it could have settled for prior to the second trial of the Harper suit. Both insurance companies refused to pay any more than the sums just indicated.

After the payments just above indicated, and after each and both of these insurance companies had refused to further protect Hicks from the judgment and execution in the Harper case, Hicks, as it was compelled to do in order to avoid having its property levied upon and sold at public sale to satisfy the balance due on the Harper judgment, paid the balance due thereon, amounting to the sum of $2,717.91, including interest and costs. This payment was made by Hicks, as a last resort, and after it had exhausted every effort to induce these insurance companies and each of them to protect it.

After satisfying the balance due on the Harper judgment in the sum above indicated, Hicks filed this suit in the District Court of McLennan County against the above-named insurance companies. By its pleadings in the district court in this case, Hicks detailed, in substance, the facts we have recited, and sought judgment against each and both of these insurance companies for the amount it paid on the J. W. Harper judgment. Also, Hicks sought judgment against both insurance companies for reasonable attorneys' fees for attorneys which it, in effect, alleged it had employed in the Harper case. We will refer to this matter later. We will not detail the pleadings of any of the parties. We will simply assume that all pleadings are suf-

ficient to present the questions of law which we shall decide. We simply here note that both of the defendants answered in the case.

At the close of the evidence the trial court submitted two issues to the jury, as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence, if any, that defendant, Traders & General Insurance Company, in refusing to accept the $3000.00 offer of settlement, failed to act as an ordinary prudent person would have acted under the same or similar circumstances?"

"Special Issue No. 2: What amount of money, if any, do you find from a preponderance of the evidence, if any, would be a reasonable attorney's fee for the services performed, if any, for Hicks Rubber Company, Distributors, by its attorney, H. M. Richey, in connection with the J. W. Harper judgment up to and including January 27, 1940?"

The jury was unable to agree upon an answer to Special Issue No. 1, supra. Special Issue No. 2 was answered: "$750.00." The court received the verdict just described.

After the verdict above indicated was received by the court, Hicks moved for judgment in its favor against both insurance companies for $3,467.91. This was the sum Hicks was out on the Harper judgment, $2,717.91, plus $750.00 attorneys' fees found by the jury in response to Issue No. 2, supra. We here quote from the opinion of the Court of Civil Appeals: "Employers objected to any judgment being entered, contending that since the jury had failed to agree upon an answer to special issue No. 1, a mistrial should be declared; and, subject to such objection, it moved for judgment in its favor non obstante veredicto, as did Traders also, each upon extended grounds set forth in their respective motions. The court overruled the motions of each defendant and granted the motion of plaintiff for judgment against both defendants, decreeing in the judgment, however, that Hicks should exhaust all remedies by execution and otherwise against Employers 'which is decreed to be primarily liable for the plaintiff's judgment, before proceeding in any way to collect the same from the defendant Traders'; that if Traders should be required at any time to pay any sum to Hicks on said judgment, then in that event

Traders was awarded judgment over against Employers for any sum so paid. The court further rendered judgment in favor of Traders against Employers for the sum of $702.70 which represented one-third of the amount of expenses paid out by Traders in the defense of the Harper suit."

Both Employers and Traders appealed from the judgment of the district court to the Court of Civil Appeals at Waco. Employers appealed from such judgment in its entirety, and Traders appealed from that portion of the judgment which awarded Hicks a recovery against it.

The disposition made of this case before the Court of Civil Appeals is shown by the concluding paragraph of its opinion, which is as follows:

"On the entire record before us, we have concluded that the portion of the judgment which awarded a recovery in favor of Hicks against Traders should be affirmed and that the remainder of the judgment which awarded a recovery in favor of Hicks and Traders against Employers and which decreed that Employers was primarily liable as between the two insurance companies, should be reversed and the causes remanded for further proceedings in accordance with the following instructions: (1) If upon another trial it is shown that Traders has discharged its liability to Hicks under that portion of the judgment which is here affirmed, then Hicks should be dismissed from the suit or denied a further recovery and the court should proceed to try the cross-action of Traders against Employers in a manner consistent with the views herein expressed; (2) but if upon another trial Hicks should show that it has been unable by the timely issuance of execution to collect its judgment against Traders, then in that event the trial court should proceed to a trial of the Hicks cause of action against Employers and to a trial of the cross-action of Employers against Traders in keeping with the views herein set forth. And it is so ordered." (160 S. W. (2d) 96.)

Traders and Employers both prosecuted writs of error to this Court, and both writs were granted.

### OPINION.

As already shown, the trial court awarded Hicks a judgment against both Traders and Employers for $3,467.91. This is

the amount Hicks paid to J. W. Harper on his judgment, $2,717.91, plus the $750.00 attorneys' fee for Hicks' attorneys, indicated by Issue No. 2 of the court's charge, supra. The Court of Civil Appeals affirmed this part of the trial court's judgment as against Traders, but reversed the same as against Employers. Traders contend that the action of the Court of Civil Appeals in affirming Hicks' judgment against it was error, both as to the amount Hicks paid to J. W. Harper and the $750.00 attorneys' fee. We are of the opinion that this contention should be sustained.

■ As we have already stated, Hicks carried two insurance policies which operated to indemnify it against loss on account of the Harper judgment. The Traders' policy was for $20,000.00, and the Employers' policy was for $10,000.00. Each policy contained the "Other Insurance" clause, sometimes referred to as the "pro rata" insurance clause. The legal effect of each of such provisions is to provide that each insurer shall not be liable for any greater proportion of any loss which may occur than the amount named in the policy bears to the entire amount of the insurance coverage. We think the authorities uniformly hold that such an insurance contract, in the absence of any statute to the contrary, is valid, and that it creates a liability that is several and not joint. This being true, such a contract will not justify a recovery by the insured against an insurance company for more than the pro rata amount stipulated therein. 29 Amer. Jur., sec. 1326, p. 993; 26 C. J., sec 617, p. 455, Id. 26 C. J., sec. 463, p. 362; Appleman on Insurance Law and Practice, Vol. 8, pp. 324-5; Cyclopedia of Insurance Law, Couch, Vol. 7, sec. 1846, pp. 6156-7; Southern National Ins. Co. of Austin v. Barr, 148 S. W. 845; Liverpool & London Ins. Co. v. Delta County Farmers Assn., 121 S. W. 599; Central States Fire Ins. Co. v. Jenkins, 220 Ky. 566, 295 S. W. 855, 55 A. L. R. 86; Globe National Fire Ins. Co. v. American Bonding Co., 205 Ia. 1085, 217 N. W. 268, 56 L. R. A. 463.

■ Since the insurance contract issued by Traders to Hicks only obligated it to pay its proportion of the loss incurred by Hicks as such proposition is above defined, and since such proportion is two-thirds as to Traders and one-third as to Employers, and since Traders has fully paid and discharged its two-thirds of such loss, the trial court erred in awarding Hicks any recovery against Traders for any amount paid by Hicks on the Harper judgment. It, of course, follows that the

Court of Civil Appeals erred in affirming that part of the Hicks judgment against Traders.

A careful examination of this record convinces us that Hicks, as a matter of law, committed no act which would excuse Employers from its liability to pay to Hicks one-third the amount cast against it in the Harper judgment. When Harper offered to settle for $3,000.00, the executive officer of Hicks was consulted. Such officer expressed it as his opinion that the sum named in the offer of settlement was too much. We will assume, for the purposes of this opinion, that such officer even advised against paying that amount. At the same time, it is shown that all parties concerned with the Harper suit knew the facts and risks pertaining thereto, as well as Hicks or its officers did. Hicks certainly offered no impediment to the making of such settlement. Indeed, it could not have done so. Under such a record Hicks is entitled, as a matter of law, to recover from Employers the amount it paid on the Harper judgment, $2,717.91. It takes this amount to discharge Employers' one-third liability to Hicks.

■ The trial court awarded Hicks a judgment against both Traders and Employers for $3,467.91. We have just disposed of $2,717.91 of this judgment. The balance $750,00, was awarded in response to the answer of the jury to Issue No. 2, above quoted. The Court of Civil Appeals affirmed this judgment as against Traders, but reversed it as against Employers. Traders contends that this portion of the judgment is erroneous, because without basis in its insurance contract, and without authority of any law in force in this State. We have already detailed the circumstances under which Hicks claims the right to this recovery. As is evident from the very wording of the issue submitted to the jury, Hicks claims this recovery on the theory that it was incurred as a necessary and lawful expense in the Harper suit. This must be true, because the issue submits the issue of attorney's fees as pertaining to the Harper judgment. We are unable to sustain such theory. Hicks employed no attorneys in the Harper suit. He was represented in the beginning by attorneys furnished both by Traders and Employers. After the attorneys furnished by Employers withdrew, the attorneys furnished by Traders continued to represent Hicks, until the Harper suit was ended by a final judgment, Hicks employed no attorneys up to that time. After the Harper judgment became final, and after execution was

about to be levied on Hicks' property, and while both of these insurance companies were failing or refusing to pay such judgment, Hicks employed attorneys to represent it in the premises. Simply stated, Hicks employed attorneys to represent it in enforcing the respective obligations of these two companies, to protect it against any loss on account of the Harper judgment. It is plainly evident that such employment pertains to the subject matter of this suit, and not to the subject matter of the Harper suit. These insurance companies, under their contracts, had to defend the Harper suit and furnish attorneys for that purpose. Such obligation was certainly performed by Traders. Neither of these insurance companies has any contract to furnish attorneys in this suit, and we know of no statute that provides therefor. It follows that neither Traders nor Employers is liable for this $750.00.

We now come to decide the rights and liabilities of these two insurance companies as between each other, as presented by this appeal.

When Employers refused to further assist in the defense of the Harper suit, Traders shouldered the entire burden, including the appeals to the Court of Civil Appeals and to this Court. In so doing it paid out more than two-thirds of the costs and expenses incurred. Traders sues Employers to make it pay its proportionate one-third of such costs and expenses. On the other hand, Employers sues Traders to make it, Traders, reimburse it, Employers, for any sum Employers may be compelled to pay Hicks over and above what the Harper suit could have been settled for, including expenses and costs in such suit. Employers' suit against Traders is based on the theory that Traders was negligent in not accepting the Harper offer of settlement.

■ It is the general rule that, if two or more insurers bind themselves to pay the entire loss insured against, and one insurer pays the whole loss, the one so paying has a right of action against his coinsurer, or coinsurers, for a ratable proportion of the amount paid by him, because he has paid a debt which is equally and concurrently due by the other insurer. On the other hand, it is also the general rule that, if each of several insurers contracts to pay such proportion of the loss as results from the destruction of the thing insured, as the amount insured by such insurer bears to the whole in-

surance effected on the thing insured, none of such insurers has any right to contribution from the others, nor will the payment of the whole loss by any of them discharge the liability of the others. This is because in such a case the contracts are several, and independent of each other. 29 Amer. Jur., p. 998, sec. 333, and authorities there cited. Since each of the two insurance contracts here involved contains a clause confining each insurer's liability to a proportion of the loss, the rights of these two companies must be governed by the rule that one insurer paying more than his proportionate part cannot recover such excess from the other insurer. This rule will preclude any recovery by Traders against Employers. Also, since these contracts are independent and several, Traders will not be liable to Employers for any negligence on the part of Traders in refusing to settle the Harper suit.

It is ordered that the judgments of the Court of Civil Appeals and district court be both set aside and held for naught, and judgment is here rendered as follows:

(1) It is ordered that Hicks recover of and from Employers the sum of $2,717.91, with interest thereon from January 15, 1941, the date it paid said sum on the J. W. Harper judgment.

(2) It is ordered that Hicks take nothing against Traders.

(3) It is ordered that Traders take nothing against Employers.

(4) It is ordered that Employers take nothing against Traders.

(5) It is ordered that the costs in all courts be paid by the respective parties to this suit in the following proportions:

(a) Hicks shall pay 10 per cent.

(b) Traders shall pay 20 per cent.

(c) Employers shall pay 70 per cent.

(6) Except as above adjudged, it is ordered that no party to this suit shall recover anything against any other party.

Opinion delivered February 17, 1943.

Rehearing overruled March 31, 1943.