# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 4, 2010

Charles R. Fulbruge III
Clerk

No. 08-20532

TRINITY UNIVERSAL INSURANCE COMPANY; UTICA NATIONAL
INSURANCE; NATIONAL AMERICAN INSURANCE COMPANY,
SUBROGEES OF LACY MASONRY INC.,

Plaintiffs–Appellants–Cross-Appellees

v.

EMPLOYERS MUTUAL CASUALTY COMPANY,

Defendant–Appellee–Cross-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

This appeal presents an issue of first impression. In *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.*, 236 S.W.3d 765 (Tex. 2007), the Texas Supreme Court held that if relevant insurance policies to a dispute contain pro rata or "other insurance" clauses, and a co-primary insurer pays more than its pro rata portion of a settlement to indemnify an insured and another co-primary insurer underpays, then the overpaying insurer cannot seek reimbursement from the underpaying insurer under theories of contribution or subrogation. In this appeal, we must decide whether the holding in *Mid-*

*Continent* extends to an insurer's duty to defend its insured. If *Mid-Continent* does not apply, then we must decide whether insurance companies that pay defense costs may recoup a portion of those costs from a co-insurer that fails to defend a common insured.

For the following reasons, we affirm the district court's finding that Defendant–Appellee–Cross-Appellant Employers Mutual Casualty Co. ("EMC") has a duty to defend its insured in the underlying suit. However, because the district court erred in applying the rule of *Mid-Continent* to prohibit Plaintiffs–Appellants–Cross-Appellees Trinity Universal Insurance Co., Utica National Insurance, and National American Insurance Co. (collectively "Appellants") from recovering defense costs, we remand for a determination of those costs. We do not reach the parties' ancillary subrogation issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Appellants and EMC each issued commercial general liability ("CGL") insurance policies to Lacy Masonry, Inc., covering Lacy Masonry while it was engaged as the mason in the design, construction, and renovation of McKenna Memorial Hospital ("McKenna") in New Braunfels, Texas. Each policy obligated the issuing insurer to indemnify Lacy Masonry for "sums that [Lacy Masonry] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" to which the policy applied. Each policy further obligated the issuing insurer "to defend [Lacy Masonry] against any 'suit' seeking those damages." The four policies contained materially identical pro rata or "other insurance" clauses under which "each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first." EMC's policy contained a "Designated Work endorsement/exclusion" (the "Designated Work exclusion") limiting its coverage by excluding any injuries arising out of Lacy Masonry's construction,

2

installation, application, or other service of an "exterior insulation and finish system" ("EIFS"), or any work Lacy Masonry performed on any exterior component of a building if an EIFS was used on any part of that structure.

McKenna sued Lacy Masonry and several other companies, alleging each was responsible for property damage caused during the design, construction, and improvement of the hospital building. Lacy Masonry tendered the defense of the suit to its insurers. Appellants, along with a fourth insurer that is not involved in this case, agreed to defend Lacy Masonry and shared the defense costs. EMC, however, denied that it had a duty to defend the suit under its policy and refused to participate in or contribute to the defense. The participating insurers settled with McKenna while this appeal progressed.

## B.    Procedural Background

Appellants sued EMC in the district court, alleging claims for breach of contract, contribution, and attorney's fees, and seeking a declaration that EMC owes a duty to defend Lacy Masonry in the McKenna suit. The parties cross-moved for summary judgment. The district court granted Appellants' motion for a declaratory judgment in part, finding that EMC had a duty to defend Lacy Masonry in the underlying suit. The district court denied Appellants' request for a discretionary award of attorney's fees, citing the Texas Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. § 37.009. Despite finding that EMC had violated its duty to defend, the district court dismissed Appellants' claims on the merits, finding that, under *Mid-Continent*, Appellants could not recover defense costs from EMC under either contribution or subrogation theories. Both parties timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal from a final order of the district court under 28 U.S.C. § 1291. We review de novo a district court's award of summary judgment, applying the same standard as the district court. *Ford*

*Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2008). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co.*, 264 F.3d at 498.

## III.  ANALYSIS

### A.    EMC's Duty to Defend Lacy Masonry

EMC asserts that we need not reach the application of *Mid-Continent* because the district court erred by finding that EMC had a duty to defend Lacy Masonry in McKenna's suit. EMC contends that the Designated Work exclusion exempts it from defending Lacy Masonry. This argument lacks merit.

#### 1.     An Insurer's Duty to Defend

Under a typical CGL policy an insurer assumes two distinct duties: the duty to indemnify and the duty to defend. *See Ohio Cas. Ins. Co. v. Time Warner Entm't Co.*, 244 S.W.3d 885, 890 (Tex. App.—Dallas 2008, writ denied). Whereas the "duty to indemnify protects insureds 'from payment of damages they may be found legally obligated to pay,'" the duty to defend "'protects the same parties against the expense of any suit seeking damages' covered by the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 n.28 (Tex. 2009) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex. 1965)).

The Texas Supreme Court recently summarized the duty to defend under

Texas law. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91 (Tex. 2008). "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." *Id.* (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)). Therefore, "an insurer may have a duty to defend but, eventually, no obligation to indemnify." *Id.* (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)).

Texas follows the "eight-corners rule," in which "'an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.'" *Id.* at 491 (quoting *GuideOne*, 197 S.W.3d at 308). A court "resolve[s] all doubts regarding the duty to defend in favor of the duty and . . . construe[s] the pleadings liberally." *Id.* (citations omitted). "'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.'" *Id.* (quoting *Heyden Newport*, 387 S.W.2d at 26 (citation omitted)).

The court must resolve all doubts regarding coverage in favor of the insured, but it cannot "look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141–42 (Tex. 1997). Although the burden is typically "on the insured to show that a claim against him is potentially within the scope of coverage under the policies," when "the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply." *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). When assessing the insurer's proffered exclusion, "'[t]he court must adopt the construction of an exclusionary clause

urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

Thus, in determining whether EMC had a duty to defend Lacy Masonry, we must compare the allegations in McKenna's Fourth Amended Petition (the "Petition") to Lacy Masonry's EMC insurance policy (the "EMC Policy") and determine whether the allegations in the Petition potentially fall within the scope of the policy's coverage. *See Zurich Am. Ins. Co.*, 268 S.W.3d at 491; *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007).

### 2. The EMC Policy

The EMC Policy is a standard CGL policy that provides insurance coverage for "property damage" caused by an "occurrence." As the Texas Supreme Court recently recognized when construing a similar policy, "claims for damage caused by an insured's defective performance or faulty workmanship may constitute an 'occurrence' when 'property damage' results from the unexpected, unforeseen or undesigned happening or consequence of the insured's negligent behavior." *Lamar Homes, Inc.*, 242 S.W.3d at 16 (quotations omitted). Two portions of the EMC Policy are particularly relevant: (1) the body of the policy itself (and the definitions of terms therein) and (2) the Designated Work exclusion.

The body of the EMC Policy defines covered "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." However, the Designated Work exclusion exempts from coverage "'property damage' included in the 'products/completed operations hazard' and arising out of 'your work' shown" in a schedule included in the exclusion.

The EMC Policy defines a "products/completed operations hazard" as "all . . . 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work,'" subject to certain exceptions not relevant here. The EMC Policy also defines "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations."

The Designated Work exclusion adds a schedule that specifies when "your work" is "Designated Work" excluded from coverage. The exclusion exempts "[a]ny work or operations with respect to any exterior component, fixture or feature of any structure i[f] an [EIFS] is used on any part of that structure."[1] The schedule further defines an EIFS as "an exterior cladding or finish system used on any part of any structure" consisting of certain materials.

As the district court succinctly summarized, the Designated Work exclusion in the EMC Policy:

> excludes coverage for injuries to or loss of use of tangible property on premises not owned or rented by the insured, Lacy Masonry, if those injuries arise out of either its construction, installation, application, or other service of an EIFS, and also excludes coverage for any work or operations performed by Lacy Masonry on any exterior components or features of a structure if EIFS is used on that structure or any part of the structure.

*Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 586 F. Supp. 2d 718, 723 (S.D. Tex. 2008).

### 3. Comparison of the EMC Policy to the Petition

Appellants and EMC dispute the construction of the Petition. EMC contends that the Petition only alleges damages arising from Lacy Masonry's construction of an EIFS or its work on the exterior components of a building that

---

[1] In the Designated Work exclusion, "if" is written as "in." Reading this word as "in" would limit the scope of the Designated Work exclusion. This reading is problematic, however, as it renders the remainder of the sentence nonsensical. Most likely, this is a typographical error. Regardless, EMC has a duty to defend Lacy Masonry even if this word is read as "in."

has an EIFS, either of which would bring its work within the scope of the Designated Work exclusion. Appellants argue that the Petition potentially alleges property damages stemming from Lacy Masonry's work on non-exterior components of the building, which the EMC Policy would cover.

The district court found that the allegations in the Petition potentially fall within the scope of the EMC Policy's coverage. We agree. The Petition alleged that Lacy Masonry, as the "mason for the Project[,] . . . was responsible for the proper installation of *all masonry work,*" and listed a wide array of alleged defects on various portions of the building, including "water infiltration caused by improperly installed masonry." (emphasis added.) This water infiltration could have been caused by defects in interior masonry or from a source inside the building. Indeed, the Petition specifically identifies "water infiltration at the *interior* and exterior building envelope," which would likely include portions of the building other than its exterior. (emphasis added.) As previously noted, "[w]here the complaint does not state facts sufficient to clearly bring the case within or without the coverage . . . the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Heyden Newport*, 387 S.W.2d at 26 (quotation marks omitted). In this case, the potential clearly exists.

We must liberally construe the Petition and resolve all ambiguities in favor of coverage. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005). Because the allegations do not clearly and unambiguously fall outside the scope of the EMC Policy's coverage, the district court properly found that EMC has a duty to defend Lacy Masonry. We affirm the district court's finding on this issue.

## B. The Rule of *Mid-Continent* as Applied to Defense Costs

Mid-Continent and Liberty Mutual were co-primary insurers of Kinsel Industries. *Mid-Continent*, 236 S.W.3d at 768–69. Both Mid-Continent's and

Liberty Mutual's insurance policies contained an "other insurance" clause, and both insurers assumed responsibility for a pro rata share of Kinsel's liability stemming from a car accident. *Id.* at 769. Liberty Mutual entered into settlement negotiations and agreed to settle for $1.5 million. *Id.* Mid-Continent contributed only $150,000 to the settlement, leaving Liberty Mutual to pay the balance. *Id.*

Liberty Mutual sued Mid-Continent in Texas state court to recover the amount it had contributed to the settlement over its pro rata share. Mid-Continent removed the case to federal district court. The district court found for Liberty Mutual, ruling that the subrogation clause in Liberty Mutual's policy allowed it to recover from Mid-Continent on Kinsel's behalf. *Id.* Mid-Continent appealed, and we certified the question to the Texas Supreme Court. *Liberty Mut. Ins. Co. v. Mid-Continent Ins. Co.*, 405 F.3d 296, 297 (5th Cir. 2005).

The Texas Supreme Court rejected Liberty Mutual's claims for contribution and found that it did not have a right of subrogation because Kinsel was fully indemnified. *Mid-Continent*, 236 S.W.3d at 768, 772. The Texas Supreme Court cited its earlier decision in *Traders & General Insurance Co. v. Hicks Rubber Co.*, 169 S.W.2d 142 (Tex. 1943), where it held that an "other insurance" clause precludes a claim for contribution asserted by one co-insurer against another. *Mid-Continent*, 236 S.W.3d at 772. The court also noted that "this direct claim for contribution between co-insurers disappears when the insurance policies contain 'other insurance' or 'pro rata' clauses." *Id.* (citation omitted). The court reasoned:

> The effect of the pro rata clause precludes a direct claim for contribution among insurers because the clause makes the contracts several and independent of each other. With independent contractual obligations, the co-insurers do not meet the common obligation requirement of a contribution claim—each co-insurer contractually agreed with the insured to pay only its pro rata share of a covered loss; the co-insurers did not contractually agree to pay

each other's pro rata share.

*Id.* (citations omitted). Thus, the court held that "a co-insurer paying more than its proportionate share cannot recover the excess from the other co-insurers." *Id.* (citing *Hicks Rubber Co.*, 169 S.W.2d at 148).

Given the Texas Supreme Court's decision, we reversed the district court's judgment and remanded with instructions to enter a take-nothing judgment against Liberty Mutual. *Liberty Mut. Ins. Co. v. Mid-Continent Ins. Co.*, 508 F.3d 261, 262–63 (5th Cir. 2007) (per curiam).

1.   **Application of *Mid-Continent* to Appellants' Contribution Claim for Defense Costs**

Despite finding that EMC had breached its duty to defend Lacy Masonry, the district court found that, under the Texas Supreme Court's decision in *Mid-Continent*, Appellants could not recover defense costs from EMC under either a contribution or subrogation theory. Although the district court correctly explained much of the *Mid-Continent* decision, it mischaracterized the holding with respect to its denial of Liberty Mutual's contribution claim. *Mid-Continent* only addressed the question of whether one co-insurer has a right of contribution or subrogation against a non-paying co-insurer to recover money paid to *indemnify* a common insured for a loss. *Mid-Continent* left open the separate question of whether a co-insurer that pays more than its share of *defense costs* may recover such costs from a co-insurer who violates its duty to defend a common insured.

Texas courts have repeatedly affirmed that an insurer's duty to defend is separate from and broader than its duty to indemnify. *See, e.g.*, *Zurich Am. Ins. Co.*, 268 S.W.3d at 490. The language of the EMC Policy confirms this duty. By its express terms, the "other insurance" provision speaks only to an insured's "loss." It provides that, if there are co-primary insurance policies, EMC will share the cost of paying for any loss that Lacy Masonry suffers. It does not

indicate a similar proration of costs incurred in fulfilling its separate and distinct duty to defend Lacy Masonry. The "other insurance" clause applies only to the duty to indemnify, not the duty to defend.

The fact that the "other insurance" clause applies only to EMC's duty to indemnify is dispositive of this issue. To prevail on a claim for contribution, a party must show that "(1) the several insurers share a common obligation or burden and that (2) the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Mid-Continent*, 236 S.W.3d at 772 (numbering added). In *Mid-Continent*, the Texas Supreme Court held that "[t]he effect of the pro rata ['other insurance'] clause precludes a direct claim for contribution among insurers because the clause makes the contracts several and independent of each other." *Id.* at 772. Because the duty to indemnify is "several and independent," Liberty Mutual could "not meet the common obligation requirement of a contribution claim. Each co-insurer contractually agreed with the insured to pay only its pro rata share of a covered loss; the co-insurers did not contractually agree to pay each other's pro rata share." *Id.*

The same is not true as to EMC and its duty to defend Lacy Masonry. The EMC Policy provides that EMC "will have the right and duty to defend the insured against any 'suit' seeking" damages covered by the EMC Policy. An "other insurance" clause does not modify this obligation so as to render it several and independent. Although EMC may owe only one-fifth of the cost to indemnify Lacy Masonry, it—along with Appellants—had a complete duty to defend Lacy Masonry. The duty to defend creates "a debt which is equally and concurrently due by" all of its insurers. *Id.* (internal quotation marks omitted). Indeed, this conclusion is supported by the uniform holdings of Texas courts that if even a single claim in a lawsuit potentially falls within an insurance policy's coverage, the insurer has a duty to provide a *complete* defense. *See, e.g.*, *Tex. Prop. & Cas.*

11

*Ins. Guar. Ass'n/Sw. Aggregates, Inc. v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 606 (Tex. App.—Austin 1998, no pet.); *see also Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 363 (5th Cir. 2008) (noting the "complete defense" obligation of an insurer under Texas law). As one Texas court stated, "[t]his is because the contract obligates the insurer to *defend* its insured, not to provide a pro rata defense." *Sw. Aggregates*, 982 S.W.2d at 606. Contrary to the district court's conclusion, Appellants satisfied the "common obligation" requirement for a contribution claim.

Because EMC admits that it did not participate in or contribute to Lacy Masonry's defense, Appellants satisfy the second requirement for a contribution claim, "that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Mid-Continent*, 236 S.W.3d at 772. Accordingly, the district court erred in finding that Appellants could not recover from EMC a one-fifth portion of the cost of defending Lacy Masonry in the McKenna suit. Therefore we reverse the district court's finding on this issue and remand for the determination of defense costs to which Appellants are entitled and with instructions to enter judgment for Appellants in that amount.

### 2. Subrogation

The parties briefly address Appellants' right of subrogation against EMC. Our holding that Appellants succeed on their contribution claim precludes discussion of subrogation and we need not reach that issue.

### IV. CONCLUSION

We AFFIRM that portion of the district court's judgment in which the district court found that EMC has a duty to defend Lacy Masonry. However, because the district court incorrectly applied *Mid-Continent*, we REVERSE that portion of the district court's judgment and hold that Appellants are entitled to collect a proportionate share of defense costs from EMC. We REMAND for the

determination of the defense costs.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.