**AFFIRM; Opinion Filed August 14, 2013.**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

## No. 05-11-01663-CV
_____

**MARQUIS ACQUISITIONS, INC., Appellant**
**V.**
**STEADFAST INSURANCE COMPANY AND JULIE FRY, Appellees**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-09-04702-B**

## OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Evans

Marquis Acquisitions, Inc. appeals from a summary judgment rendered in favor of

Steadfast Insurance Company and Julie Fry on Marquis's claims for breach of contract,

violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and

"aiding and abetting." In a single point of error, Marquis contends the trial court erred in

granting the summary judgment because Steadfast and Fry failed to show they were entitled to

judgment as a matter of law. After considering Marquis's arguments, we conclude they are

without merit. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

The claims in this case arise out of the legal defense provided by Steadfast Insurance

Company to Marquis Acquisitions, Inc. and related entities in an underlying lawsuit brought by

the Burks family in January, 2007. The underlying suit was based on a fire at the Colonia

Tepeyac Apartments in Dallas, Texas that killed three members of the Burks family and injured several others. The Burks filed suit against multiple defendants with ownership or management interests in the apartment complex including Marquis, Colonia Tepeyac, Ltd., Colonia Tepeyac, G.P., Inc., Marquis Asset Management, Inc., and Hickok Interests, Inc. All of these entities were either owned or controlled by Doug Hickok.

The defendants carried several layers of insurance. The first layer was a $30,000 self-insured retention policy administered by Innovative Risk Management ("IRM"). IRM agreed to provide a defense in the Burks suit subject to a reservation of rights and hired Joe Michael Russell as defense counsel. Evan Lane "Van" Shaw, Hickok's partner in various business interests as well as his attorney in the present suit, had an ownership interest in Colonia Tepeyac, Ltd. On April 4, 2007, Shaw sent a letter to IRM stating that he represented Colonia Tepeyac, Ltd. in connection with the Burks case and asked IRM to clarify its reservation of rights as to that company. Shaw stated that, if IRM was reserving its rights, then his client had the right to "select its own defense counsel and require [IRM] to pay for that defense." Shaw also sent proposed motions to IRM to substitute himself for Russell as counsel. IRM agreed to allow Shaw to take over the defense if the defendants consented in writing and Shaw was willing to work for the lower hourly rate charged by Russell. Shaw declined the offer.

On May 17, IRM informed Shaw that it was withdrawing its reservation of rights and providing all the insureds with an unqualified defense. The letter referenced apparent allegations by Shaw that a conflict of interest existed among the insureds requiring that separate counsel be hired. IRM asked Shaw to provide further information or evidence of the potential conflict so that IRM could evaluate whether one or more of the defendants needed separate counsel. Shortly after sending this letter, however, the self-insured retention amount was exhausted and IRM tendered the defense to Steadfast which provided the second layer of insurance coverage.

On May 30, 2007, counsel for Steadfast, Veronica Bates, sent Shaw a letter informing him that Steadfast was providing the insureds with an unqualified defense in the Burks suit and was assigning Clay White as defense counsel. On June 6, in an apparent response to multiple letters from Shaw asserting, among other things, the existence of a conflict of interest requiring separate counsel, Bates sent Shaw another letter informing him that she had discussed the issue of a conflict among the insureds with Russell and that Russell was of the opinion that no conflict existed. Bates further informed Shaw that the new defense counsel, White, would evaluate the case and, if he determined that a conflict existed, separate counsel would be retained. In addition, Bates reminded Shaw that because Steadfast had tendered an unqualified defense, it had the right under the insurance contract to choose the defense counsel and control the defense. Accordingly, Steadfast refused to retain Shaw as counsel.

On June 19, Julie Fry, a team manager for Steadfast, sent a letter to Hickok confirming the information in Bates's June 6 letter. Fry stated that Steadfast both acknowledged and accepted its duty to defend the insureds. Fry then asked Hickok to "explain how a conflict exists amongst the various defendants such that one counsel cannot represent all defendants." Fry stated that Steadfast had reviewed the issue and concluded that no conflict existed, but invited Hickok to provide Steadfast with his basis for asserting there was a conflict so that Steadfast could reevaluate its position.

Shaw responded to Fry with a letter the same day again asserting that a conflict existed but without providing any basis for the assertion. Relying on the alleged conflict, Shaw demanded that Steadfast hire him as counsel for Marquis. Shaw also sent an email to defense counsel White reiterating his allegation of a conflict and accusing White of wrongfully taking over Marquis's defense despite the company's request to have Shaw represent it. Shaw further stated that White's evaluation of the case was "past due."

The next day White sent a written case evaluation to Steadfast with copies to both Shaw and Hickok. In his evaluation, White stated that "the liability question will be whether or not the [fire] alarm [in the apartment]was adequate for the situation" and ". . . the plaintiffs will be able to assert that the alarm[']s placement did not comply with HUD regulations, even though it appears the apartment passed city inspection." White further stated that "if the jury believes precious seconds could have delayed the outcome and, if those seconds could have been added by the smoke detectors being placed in the bedrooms as required by the HUD statutes, the jury could make a finding of liability as to the management company or installation team."

On July 10, White sent Steadfast a second, more detailed report including information obtained from depositions and discussions with experts. Again he sent a copy of the report to Shaw and Hickok. In this report, White expanded upon his liability assessment and stated that the management entities had "potential liability as a result of failing to follow the proper regulations." White also stated that "while there is potential liability for the ownership group . . ., they certainly can indicate that they relied upon [management]." Finally, White opined that it appeared clear that the apartment complex did not meet code requirements and that this was a source of liability for both the ownership and the management defendants. But, according to White, it also appeared that "the management group was put on notice of the issue and was responsible to correct it properly."

Fry testified that White's second report identified a potential conflict of interest between the defendants with ownership interests and those with management interests. Accordingly, on July 23, 2007, Fry sent a letter to Shaw stating that while Steadfast did not believe that a conflict presently existed, it acknowledged there was potential for a conflict in the future and, therefore, was hiring separate counsel. Fry clearly indicated, however, that Steadfast was not authorizing Shaw to represent Marquis in the case but was instead hiring different defense counsel. Fry

stated that both the new defense counsel and White would continue to provide Shaw with status reports and respond to issues raised by him on a reasonable basis.

Marquis immediately sued Steadfast, Fry, and White claiming they had conspired, "aided and abetted," and were negligent in connection with the defense of the Burks suit. Because this suit created a conflict between White and Marquis, White withdrew as defense counsel in the Burks suit and Steadfast hired new counsel to represent the management entities. White eventually settled with Marquis and Marquis nonsuited its claims against Steadfast and Fry thereby terminating the suit.

The ownership entity defendants settled with the Burks family before trial for one million dollars. This settlement exhausted the Steadfast policy limits and the defense was taken over by the excess coverage insurance carrier. The case proceeded to trial in April 2008 and the jury found in favor of the Burks against the management defendants. The parties eventually settled for an amount within policy limits.

Following the trial, Marquis brought this suit against Steadfast and Fry "in an effort to recover the attorney's fees it expended in getting Steadfast to retain separate counsel for the owner group of insureds." Marquis asserted claims for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and "aiding and abetting." Steadfast and Fry moved for summary judgment on all Marquis's claims contending that they complied with their legal and contractual obligations as a matter of law and, in the alternative, Marquis suffered no recoverable damages as a result of their allegedly wrongful actions. Following a hearing, the trial court signed a final judgment dismissing Marquis's claims with prejudice. Marquis filed motions for new trial that were overruled by operation of law. This appeal ensued.

# ANALYSIS

## I. STANDARD OF REVIEW

Marquis presents a single point of error contending the trial court erred in granting summary judgment in favor of Steadfast and Fry because they failed to show their entitlement to judgment as a matter of law and Marquis's summary judgment evidence raised genuine issues of material fact. We review a trial court's summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). We consider the evidence in the light most favorable to the nonmovant and resolve any doubts in the nonmovant's favor. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). If the movant satisfies its burden, the burden shifts to the nonmovant to preclude summary judgment by presenting evidence that raises a genuine issue of material fact. *See Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied). A fact is material if it affects the ultimate outcome of the case under governing law. *See Nixon*, 690 S.W.2d at 548–49. Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the judgment if any of the theories advanced by the movant are meritorious. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

## II. BREACH OF CONTRACT

Marquis alleges that Steadfast breached its insurance contract with Marquis when it "fail[ed] to appoint independent counsel for the owner group and the management group in order to avoid the clear conflict that arose between the two groups of insureds." Because it is

undisputed that Steadfast appointed separate counsel for the owner and management defendants approximately two months after it assumed control of the defense, we construe Marquis's argument to be that Steadfast breached the contract by failing to employ separate counsel in a timely manner.

To succeed on a breach of contract claim, a plaintiff must show: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 140 (Tex. App.—Dallas 2012, no pet.). In this case, although Marquis generally contends that Steadfast breached the insurance contract, Marquis fails to point to any provision of the contract that it alleges was breached. Instead, Marquis cites the Fifth Circuit opinion of *In re Segerstrom* to argue that an insurance company's disregard of a notice of conflict among multiple insured defendants may subject it to liability for failing to act with reasonable care in fulfilling its duty to defend under the contract. *See In re Segerstrom*, 247 F. 3d 218, 228 (5th Cir. 2001). As *Segerstrom* notes, however, the claim at issue in that case was a tort claim, not a contract claim, and there was no indication that providing separate counsel for multiple insured parties was a contractual obligation. *Id*. at n. 7.

Even if the duty referred to in *Segerstrom* could support a claim for breach of contract, we conclude Marquis reads the duty too broadly. The court in *Segerstrom* stated there is no Texas authority imposing a duty on an insurance company to independently identify conflicts among multiple insured defendants when appointing legal counsel. *Id*. at 228. The court then went on to suggest in dicta that an insurer's failure to act when notified of a conflict by the defense counsel engaged to represent the insured may give rise to liability. *Id*. Marquis would have us read *Segerstrom* to mean that an insurer's failure to appoint separate counsel

immediately upon receiving notice of an unspecified conflict of interest from the insured would constitute a breach of contract. Nothing in the opinion supports this interpretation.

*Segerstrom* states that an insurer may breach its duty of reasonable care if it "disregards" notice of a conflict from defense counsel. *Id.* Steadfast provided summary judgment evidence showing that Russell indicated no conflict existed and Steadfast responded immediately to Marquis's allegations of an alleged conflict by requesting information to evaluate the allegation. In contrast, Marquis never responded to Steadfast's request for information, nor did it ever specify the nature of the conflict it believed existed. Nevertheless, Steadfast informed Marquis that, if it was determined that there was a conflict among the insureds, separate counsel would be retained. Within a few weeks, White was able to evaluate the case and determined there was a potential conflict between the ownership and management entities. Shortly thereafter, Steadfast hired separate counsel for the ownership entities. This evidence conclusively shows that Steadfast did not "disregard" notice of a potential conflict, but instead responded to it immediately. We see nothing in *Segerstrom* or any other Texas law that would require an insurance company to immediately hire separate counsel for insured defendants based on an insured's unspecified and unsubstantiated allegations of a conflict of interest.

Marquis relies on the affidavit testimony of its insurance expert, Ben Ralph, who stated that Steadfast's conduct "violated the terms and conditions of the policy." Like Marquis, Ralph does not specify what terms or conditions he believed were violated. More importantly, the relevant facts surrounding Steadfast's conduct are undisputed. Ralph's statement that the conduct violated the insurance contract is nothing more than a legal conclusion. Legal conclusions are not competent evidence and are insufficient to defeat summary judgment. *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) (expert testimony on legal

interpretation of unambiguous agreement encroaches on trial court's province to determine correct legal interpretation).

Finally, even if Steadfast's actions could be held to constitute a breach of the insurance contract, the summary judgment evidence conclusively shows that Marquis suffered no damages as a result. Proof of actual damages is required to recover for breach of contract. *See Sharifi*, 370 S.W.3d at 140. As part of its summary judgment evidence, Steadfast presented Shaw's own testimony in which he admitted he was unaware of any actions by either Russell or White that affected the outcome of the Burks lawsuit. All of the damages paid to the Burks were covered by insurance policies and Marquis produced no summary judgment evidence to show that it was harmed in any way by the fact that Steadfast did not hire separate defense counsel to represent it immediately upon Shaw's request.

The only "damages" sought by Marquis in this case are the fees it paid Shaw for his efforts to force Steadfast to hire him as Marquis's defense counsel. But any recovery of attorney's fees must be *in addition to* the recovery of actual damages caused by the alleged breach of contract. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009). Fees incurred by the plaintiff prior to filing suit over the alleged breach are not an exception to this rule. *Id*. at 667. Accordingly, attorney's fees incurred as a result of efforts to force an insurer to comply with the insurance contract cannot be recovered as the sole "damages" caused by the breach, but may be awarded only in connection with an otherwise successful breach of contract claim. *See Traders & Gen. Ins. Co. v. Hicks Rubber Co.*, 169 S.W.2d 142, 148 (Tex. 1943). We conclude the trial court properly granted summary judgment ordering that Marquis take nothing by its claim for breach of contract.

### III. TEXAS INSURANCE CODE VIOLATIONS

In its petition, Marquis alleged that Steadfast committed "acts, conduct, and omissions" that constituted "unfair methods of competition and unfair and deceptive acts or practices under the Texas Insurance Code." Marquis further stated that the violations committed by Steadfast included but were not limited to: (1) violating the terms and conditions of the policy by failing to comply with its duty to defend when advised of a clear conflict among its insureds; [and] (2) failing to conduct a reasonable investigation into the conflict of interest raised between the owners groups and management." Marquis did not identify which provisions of the insurance code it contended this conduct violated. In response to Steadfast and Fry's motion for summary judgment, Marquis again failed to specify which provisions of the insurance code it was contending Steadfast violated, but merely presented evidence that a conflict existed among the insureds and that Steadfast knew or should have known of the conflict.

Unfair methods of competition and unfair or deceptive trade practices in the insurance industry are regulated by chapter 541 of the Texas Insurance Code. *See* TEX. INS. CODE ANN. Ch. 541 (West 2009). Section 541.151 allows an insured to bring a private action for damages against an insurer that engages in an act or practice either defined in subchapter B of chapter 541 of the insurance code or specifically enumerated in section 17.46(b) of the Texas Business and Commerce Code. *See id* § 541.151. Steadfast moved for summary judgment on the ground that none of the acts or practices defined by subchapter B or enumerated in section 17.46(b), relate in any way to the conduct about which Marquis is complaining. We agree that nothing in either subchapter B or section 17.46(b) is applicable to an insurer's determination of whether to hire separate defense counsel for multiple insureds based upon an alleged conflict of interest.

Rather than address the applicability of subchapter B and section 17.46(b) to Steadfast's alleged delay in hiring separate defense counsel, Marquis contends for the first time on appeal

that Steadfast made a misrepresentation of coverage actionable under the Texas Insurance Code. Marquis does not specify any statement made by Steadfast, but states that Steadfast's and Fry's conduct amounted to "continuing to misrepresenting [sic] the availability of a duty to defend." At no point in either its petition or response to the motion for summary judgment did Marquis raise the issue of an alleged misrepresentation. Accordingly, Marquis cannot raise the issue now on appeal as a ground for reversal. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Then, in its reply brief on appeal, Marquis suggests for the first time that Steadfast's conduct violated sections 542.057 and 542.058(a) of the Texas Insurance Code. Sections 542.057 and 542.058(a) are found in subchapter B of chapter 542 which regulates the prompt payment of insurance claims. *See* TEX. INS. CODE ANN. Ch. 542. As with Marquis's misrepresentation argument, we conclude this issue has been waived. Not only did Marquis fail to assert this as a ground to defeat summary judgment in the trial court, it failed to raise it in its original appellate brief. A reply brief may not be used to raise new issues. *See Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied).

Even if Marquis did not waive the issue, it fails to explain how Steadfast violated these statutes. Section 542.057 prescribes the time within which an insurer must pay a claim and section 542.058(a) provides that damages are available if an insurer delays in paying a claim after receiving all items, statements, and forms reasonably requested. *See* TEX. INS. CODE ANN. §§ 542.057 & 542.058(a). The damages available are interest on the amount of the claim plus reasonable attorney's fees. *Id*. Marquis has made no allegation that Steadfast failed to make any payments due under the policy or that Marquis suffered any damages as a result of Steadfast failing to make a payment in a timely manner. To the extent Marquis is contending that Steadfast delayed in tendering a defense, it is undisputed that Steadfast immediately agreed to

–11–

provide Marquis with an unqualified defense when it took over the case and provided Marquis with counsel. As discussed above, the summary judgment evidence showed that any alleged delay in providing Marquis with *separate* counsel had no effect on the Burks lawsuit and did not result in any compensable damages to Marquis.

Based on the foregoing, we conclude the trial court properly granted summary judgment on Marquis's claim for violations of the Texas Insurance Code.

## IV. BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

An insurer breaches its duty of good faith and fair dealing when it denies or delays a claim without a reasonable basis and the insurer knew or should have known that no reasonable basis to deny or delay the claim existed. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997). An insurer does not breach its duty by merely denying a claim in error. *See U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997). If there is a bona fide dispute about the insurance company's obligations under the contract, the insurer's denial or delay does not rise to the level of bad faith as a matter of law. *Id*. With respect to a claim for a defense, an insurer must act with reasonable care. *See Segerstrom*, 247 F. 3d at 228. But it has no duty to independently identify conflicts among the insureds when appointing legal counsel. *Id*.

In this case, it is undisputed that Steadfast never denied or delayed Marquis's claim for a defense in the Burks litigation. Marquis asserts only that Steadfast was unreasonable in its "multiple denials" of Marquis's request for separate counsel. The summary judgment evidence shows, however, that Steadfast never denied Marquis's request for separate counsel, but merely stated that an early evaluation, including information from independent counsel, indicated a conflict did not exist. Steadfast then asked Marquis for further information in support of the allegation of a conflict so that it could reevaluate the request. Any delay in providing Marquis with separate counsel was the result of a bona fide dispute that Steadfast continuously attempted

0to resolve. Because the summary judgment evidence conclusively shows there was a bona fide dispute over the issue of the necessity of separate counsel, Steadfast's conduct was not in bad faith as a matter of law. *See Williams*, 955 S.W.2d at 268.

Marquis again points to its insurance expert Ralph's affidavit in support of its argument that fact issues exist precluding summary judgment. Ralph testified that "White's analysis of liability [in the Burks litigation] clearly indicated a potential conflict between the owner insureds and management insureds." Reading the affidavit in the light most favorable to Marquis, this testimony constitutes some evidence that Steadfast knew or should have known of a conflict among the insureds when it received White's initial report dated June 20. Steadfast agreed to retain separate counsel for Marquis approximately four weeks after the initial report was created. We need not decide whether this four week period could be considered an unreasonable delay because Steadfast produced summary judgment evidence that Marquis did not suffer any damages as a consequence. Again, the only damages Marquis claims to have suffered are the fees Shaw charged it for his attempts to have Steadfast hire him as Marquis's counsel. As discussed earlier, these fees are not recoverable absent other damages. *See Hicks*, 169 S.W.2d at 148. We conclude the trial court properly granted summary judgment on Marquis's claim for breach of the duty of good faith and fair dealing.

## CONCLUSION

We resolve Marquis's single point of error against it and affirm the trial court's summary

judgment in favor of Steadfast and Fry.[1]

111663F.P05

/David Evans/
DAVID EVANS
JUSTICE

---

[1] Marquis does not present any argument in its brief on appeal challenging the trial court's summary judgment on its claim against Fry for "aiding and abetting." Accordingly, any appellate challenge to this ruling has been waived. *See Smith v. Tilton*, 3 S.W.3d 77, 83 (Tex. App.—Dallas 1999, no pet.).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARQUIS ACQUISITION, INC.,
Appellant

No. 05-11-01663-CV      V.

STEADFAST INSURANCE COMPANY
AND JULIE FRY, Appellees

On Appeal from the County Court at Law
No. 2, Dallas County, Texas
Trial Court Cause No. CC-09-04702-B.
Opinion delivered by Justice Evans.
Justices Lang and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees STEADFAST INSURANCE COMPANY AND JULIE
FRY recover their costs of this appeal from appellant MARQUIS ACQUISITION, INC.


Judgment entered this 14th day of August, 2013.




/David Evans/
DAVID EVANS
JUSTICE